Webb v. Edwards.

# WEBB vs. EDWARDS.

[MOTION BY DEFENDANT IN ATTACHMENT TO HAVE SET APART TO HIM AS EXEMPT UNDER THE STATUTES, A SUM OF MONEY IN THE HANDS OF GARNISHEE, AGAINST WHOM JUDGMENT AND EXECUTION HAD BEEN AWARDED IN FAVOR OF THE PLAINTIFF IN ATTACHMENT.]

1. *Exemption statutes construed.*—In this State the claim of a resident citizen to such portion of his personal property as is exempt from sale on execution, or other final process of any court, issued for the collection of any debt, is an important and "valuable legal right."—18 Ala. Rep. 127.

2. *Same.*—Laws for the protection of this right in this State have always been liberally construed.—22 Ala. 624.

3. *Same.*—Under the laws of Alabama, money is personal property, and a resident of this State is entitled to have $1,000 of his personal property exempt for the use of his family, and the personal property so reserved may consist of money. Under the constitution, a resident without a family may claim this exemption.—Const. Ala. 1867, Art. 14, § 1; Revised Code, § 2884.

4. *Same.*—A defendant in an attachment and garnishment suit may go into the circuit court, and on motion in that court may claim a sum of money equal to the value of $1,000, while in the hands of the garnishee against whom judgment has been rendered, or after the same has been collected by the sheriff on execution against the garnishee, and have his claim to the money thus collected tried and determined by a jury, as upon a motion to show cause against a rule for the payment of the money to the claimant as his exempt property.

5. *Same; verdict of jury on trial of such motion, effect of.*—On the trial of such a motion, when all the parties in interest are before the court,

and there is no exception, the verdict of the jury is conclusive, if the law is with the claimant.

6. *Exemption, claim of; when not too late.*—The claim of such exemption does not come too late when it is made before the money thus collected is paid over to the plaintiff in the attachment suit.

7. *Judgment, what will be corrected in supreme court.*—A judgment in the court below in favor of the moveant in the court below, *"or his attorneys of record [naming them],"* will be corrected in this court, when the verdict in the court below was in favor of the moveant and the attorneys were not parties to the suit, by arresting that part ordering payment to the attorneys of record, and the judgment as thus corrected affirmed.

(PECK, C. J., *dissenting.*)

APPEAL from the Circuit Court of Henry.
Tried before Hon. J. McCALEB WILEY.

THE facts of this case may be stated as follows : The appellant, on the 28th of January, 1867, sued out an attachment against the appellee, in the circuit court of Henry county, which was executed by summoning one George Searcy, a person supposed to be indebted to said defendant, as garnishee.

The garnishee appeared, and answered in writing, that he was indebted to said defendant in the sum of seven hundred and eighty-six 73-100 dollars.

At the spring term of said court, in 1869, the plaintiff, said appellant, recovered a judgment against defendant, said appellee, for thirteen hundred and thirteen 62-100 dollars ; and, after the rendition of said judgment, at the same term, he recovered judgment against said garnishee, on his answer, for the said sum of seven hundred and eighty-six 73-100 dollars, the amount he had admitted he owed the said defendant. Of this sum, plaintiff has collected, by execution, of said garnishee two hundred and fifty-four 56-100 dollars, the remainder being unpaid.

At the fall term of said court, 1869, the defendant in said attachment made the following motion, to-wit : "Motion is made by defendant to have set apart to him the sum of one thousand dollars of the money in the hands of the garnishee, as exempt under the laws of the State, in favor of the defendant, who is and was at the time of the ser-

vice of the garnishment, the head of a family and a resident of the State."

This motion was resisted by appellant on the following grounds, to-wit : 1. " That the court had not jurisdiction to grant said motion, because a final judgment had been rendered in favor of the plaintiff against the garnishee, Searcy, at the spring term, 1869." 2. "Because said motion was not made until six months after the condemnation of the debt due by garnishee." 3. " Because the judgment against the garnishee was the property of the plaintiff."

From a bill of exceptions in the record, taken by the plaintiff, it seems the said motion was tried by a jury, but what the issue was does not appear.

On the trial, the testimony consisted of evidence that defendant was the head of a family, as stated in the motion, and the proceedings and judgments in the attachment case against defendant and said garnishee, and that two hundred and fifty-four 56-100 dollars had been collected and paid on said judgment against said garnishee.

The bill of exceptions says this was all the evidence. Thereupon, the court, at the request of said defendant, said Edwards, charged the jury, that if they believed the evidence, they must find for him.

The jury found accordingly. But what was found does not appear, as no issue is stated in the record to which it was a response. The bill of exceptions says, " said jury found for said Edwards," and the minute entry states, " they" (the jury) " find for the moveant." The judgment of the court is as follows : " It is, therefore, considered by the court, that the sheriff pay over to the said defendant, James J. Edwards, or his attorneys of record, Messrs. W. C. Oates and F. M. Wood, when collected, the balance of the money due on the judgment of the plaintiff against the garnishee, George W. Searcy. It is further considered by the court, that the defendant recover of the plaintiff the costs in this behalf expended, for which let execution issue." To the said charge, rulings and judgment of the court, the plaintiff excepted.

The case is here on plaintiff's appeal for revision, and

the rulings, charge and judgment of the circuit court are assigned for errors.

J. A. CLENDENNIN, for appellant.—Could the legislature pass a law that would authorize a court to annul and set aside the service of process which had been perfected before the passage of the act of 19th of February, 1867, (§ 2884 of Revised Code,) under which the appellee claimed the right to sustain the motion?

The appellant was pursuing nothing but his rights recognized by the existing law. It was the duty of both the defendant and the garnishee to interpose all claims of right or defense as against the plaintiff's proceeding, before the rendition of judgment. When the judgments were rendered, they were final and conclusive between the parties thereto, unless appealed from.

The judgment against the garnishee forever stopped the defendant in attachment from the collection of his note out of the garnishee, and it would have been the same with any other person to whom he may have disposed of it, and who had not given notice. The note itself was still the property of the defendant in attachment, but a change had taken place in respect to the debt. After the judgment of condemnation, it certainly did not belong to the defendant in attachment. The record recites it as a judgment in favor of the appellant; and he certainly had all the rights in it that any other plaintiff could have in a judgment, with this single contingency, that his right to it ceased when the appellee paid the judgment against himself, the garnishment judgment remaining unsatisfied.

In the case of *Weaver et al. v. Lapsley*, 43 Ala. 232-3, this court fully settled the question as to the rights of a plaintiff in a final judgment. They are pronounced contracts, and impose the highest obligations. Such contracts are entitled to the protection of the constitution equally with other contracts, and no State can pass any law impairing their obligation. They also decide that a plaintiff has a vested right in a final absolute judgment that has passed beyond the control of the court, as much as he has

in his dwelling house or farm, and they are all equally property and entitled to protection alike.

It results, then, if the judgment against the garnishee was the property of the appellant, he could use or dispose of it as he pleased. It was the right of the appellant to withhold the issuance of an execution upon it, against the garnishee, if he saw proper to do so.

After the adjournment of the court which rendered the judgment, said court ceased to have power to annul or set aside said judgment, unless by proceedings coming within the plain letter of the statute. None such appear to have been instituted.

Under and by what process would the sheriff collect the money upon the judgment other than execution, the mandate of which commands him to have the proceeds to render to the plaintiff in the judgment? and yet here is another mandate requiring him to render the same to another and different party, and depriving the attorney of record of the plaintiff in the judgment of his rights.

In the case of *Bell v. Davis*, 42 Ala. 160, the party claiming the exemption lost his right by the failure to interpose his claim at the proper time.

Has not the appellee, by his neglect and failure to bring to the notice of the court below his claim before rendition of judgment, forfeited all right or claim to have the vested rights of the appellant torn from him in the summary way in which it was done?

W. C. OATES, and F. M. WOOD, *contra.*—1. The law of this State permits a defendant to claim property as exempt at any time before a sale. And we claim that where a levy is made by garnishment, the defendant can claim the money in the hands of the garnishee at any time before it is reduced to the possession of the sheriff, or applied by him to the plaintiff's debt.

Suppose the money had been paid into court by the garnishee when he answered, could the defendant not have claimed it before it was paid over to the plaintiff? And at any time before payment of the money to the plaintiff,

could not the court have ordered the money paid by the clerk to the defendant? The sheriff is as much under the power of the court as the clerk, and why could not the court order the *sheriff* to pay the exempt money to the defendant, if it could have ordered the clerk to do it?

Exemption laws are to be construed liberally, and with this construction it is plain that the appellee was entitled to the exemption. It is the amount exempt, and not the particular thing claimed as exempt, which concerns the creditor.

By the paying over of the money in the hands of the garnishee to the defendant, the plaintiff's judgment against the defendant in attachment was not annihilated. It was still subsisting. Preventing the plaintiff from taking satisfaction out of the particular fund in the hands of the garnishee, was only a modification of the remedy, such as under the decisions of our supreme court can be made without impairing the obligation of the contract. The judgment against the garnishee was only a remedy given for the collection of the original debt.

The fault of the appellant's argument is, that it omits to notice that under our law the judgment creditor has no absolute right to satisfy his judgment out of a particular fund that may be lawfully claimed as exempt. Enforcing the exemption is not destroying a judgment, but enforcing a right existing before the judgment was rendered.

Construing the exemption law liberally, why may not the money in this case be claimed as exempt at any time before being paid over to the plaintiff? There are no elements of estoppel, as claimed by appellant. Courts can always alter, or correct, or control their process so as to prevent injustice and to enforce rights; there is, therefore, no valid reason why the court can not order the money paid over to the claimant, notwithstanding it might have been collected on an execution in favor of the plaintiff. The money collected of the garnishee was certainly the property of the defendant, else how could the appellant have a judgment against the garnishee?

PETERS, J.—The issues made in this record do not involve any question of constitutional power to make the exemption in controversy. Nor do they present any question which puts the policy of exemption laws upon trial. If they did, it seems to me that it would not be difficult to show that in a great republican and agricultural nation, as this is, it is of the utmost importance to the stability and prosperity of the State, that *all* its citizens, in whom its sovereignty is vested, shall have homes, and the means of support for their families and the education of their children. In such an inquiry, it is to be presumed that a people well educated and diligently instructed in christian morals, if they are provided with homes and the means of cultivating their farms, will always pay their debts, if indeed such a people do not soon cease to be a debt-owing community altogether. In this country, the people represent the nobility of other nations. And there is no nation of any importance in history, that has deprived its nobility of their homes and the means of a comfortable support, in order to secure the payment of their debts. An English lord or prince would regard it as an assault upon the constitution of their country, to attempt to render his home and the means of his support subject to the payment of his debts. This exemption on their behalf they laud as the safeguard of the state. Why should it be less so here? The principle in the one case is equally good in the other. It is this: the citizen in whom the sovereignty is vested should be placed in a situation to raise him above the hindrances and the temptations of poverty. In the system from which ours is, in great measure derived, the people are ranged into two classes: the *prince* in the one, and the *subject* in the other. Our system makes all princes, and all are alike entitled to the exemptions to which princes may claim to be entitled. A home, and the means to make it useful, and some degree of intelligence, are elementary necessities of the governing classes. *With us, all belong to this class.*—Decl. Indep.

The courts, having no legislative powers here, have simply copied so much of the English commercial system

as they have deemed suitable to our institutions; and the common law of the prince and his agricultural exemptions are altogether left out. This is now corrected by the legislature. And it is the duty of the courts to see that this correction has not been made in vain. No opposition to this correction can stay it from the accomplishment, sooner or later, of the high purpose for which it is designed. We have bidden farewell to the age when the interests of hucksters, and peddlers, and money-changers can subject to their uses the liberty, the home and independence of the citizen and prince.

The courts must execute the laws. In this State, their officers are solemnly sworn *"honestly and faithfully* to support and defend the constitution and laws of the United States, the union of the States, and the constitution and laws of Alabama."—Const. Ala. 1867, Art. XV. It scarcely needs an argument to show that to " support " a law means to enforce it, and to prevent any failure of the purpose for which the legislative authority brought it into being. If a law is permitted to fail of its purpose, it is rendered of no effect. Then it can not be said to be supported.

Among the duties courts have to perform, it is said, with them, that there is no right without a remedy. *Ubi jus, ibi remedium.*—Co. Litt. 19*i* ; 1 Term R. 512; 3 Bouv. Inst. n. 2411. And where the court may rightfully deal with the subject of controversy and the parties, and there is a right to be investigated, and the law has not prescribed a rule of practice, it is competent for the court to prescribe its own practice. Hence it is said, " the practice of the court is the law of the court." *Cursus curiæ est lex curiæ.* Broom Max. 126. Besides, the court "may amend and *control* its process and orders so as to make them conformable to law and justice."—Rev. Code, § 638, cl. 6.

Property which the " constitution and laws " of the State exempt for the use of the debtor and his family can not be said to be liable to seizure for the payment of his debts. And the creditor who contracts with a debtor knows, at the time of the contract, that the exempt property is freed from all liability for payment of any save certain specified

debts. He can not, therefore, complain, as he acted with his eyes open to such a condition. It is a risk that the creditor is willing to encounter, and if it brings harm upon him, it is his own fault. The law itself prejudiceth no man.

Here there can be no doubt of the appellee's right. The proofs show that he is a resident of this State, and the head of a family. The language of the constitution fixing the exemption is as follows : " The personal property of any resident of this State to the value of one thousand dollars, *to be selected by such resident*, shall be exempted from sale on execution, or other final process of any court, issued for the collection of any debt contracted after the adoption of this constitution."—Const. Ala. 1867, Art. XIV, § 1. In addition to this, there is a similar provision in the Revised Code, which exempts one thousand dollars worth of personal property.—Rev. Code, § 2884. This exemption is said·to be "a valuable legal right," and the laws for its support and protection have always been liberally construed.—*Ross v. Hannah*, 18 Ala. 125, 127 ; *Favers v. Glass*, 22 Ala. 621, 624 ; *Watson et al. v. Simpson*, 5 Ala. 233 ; *Noland v. Wickham*, 9 Ala. 169; *Salee v. Waters*, 17 Ala. 482 ; *Cook v. Baine*, 37 Ala. 350. It is the duty of the court, then, to support and enforce this law until it is repealed.—*Adm'r of Brewer v. Granger et al.*, in MS. ; *Ray v. Adams*, 45 Ala. 168.

This proceeding is analogous to that of several parties claiming the same fund in different rights, as upon a motion or cross bill, where the subject matter of the controversy and all the parties are within the jurisdiction of the court. No injustice can be done by such a practice. All the parties can be heard, and in the manner appointed by law :· by a public trial before the court and jury. This is all that the law secures, and all that justice requires.— Const. Ala. 1867, Art. I, §§ 15, 13 ; 20 Ala. 140, 214. There is no authority given by law to the officer who makes the collection of the money in controversy to allow the exemption. But he can bring the money into court on the

3

return of the process under authority of which it has been levied, and leave the court to dispose of it as the law directs. This is the mandate of the writ.—Rev. Code, § 2837. Undoubtedly, money collected on a *fieri facias* is personal property.—Rev. Code, § 2, cl. 3 ; 2 Tidd Pr. 1003. And in this case, it is the personal property of the defendant in the attachment suit, seized under final process of a court, issued for the collection of a debt.—Const. Ala. 1867, Art. XIV, § 1. The owner could not interpose his claim sooner, because there was no one authorized to hear it. And the motion interposing the claim has been made in this instance before the property claimed has passed from the control of the court, while the proceedings were yet in *fieri*. This is early enough.—*Watson et al. v. Simpson*, 5 Ala. 233, *supra* ; *Simpson v. Simpson*, 30 Ala. 225. In such a case as this, the claim may be made upon motion to the court, by analogy to cases of a similar character. The same reasons make the same practice. (*Est boni judicis ampliare jurisdictionem.* Gilb.)—*Rutledge's Adm'r v. Townsend, Crane & Co.*, 38 Ala. 706 ; *Langdon v. Raiford*, 20 Ala. 532 ; 3 Chitt. Pr. 570, 571 ; *Jones v. Hutchinson*, 43 Ala. 721. Besides, the appellant in this court, who was the defendant in the motion in the court below, submitted to the jurisdiction without objection, pleaded and went to trial before a jury. He can not now repudiate his acts in the court below. This proceeding is analogous to an agreed case, leaving certain of the facts to the jury. In such a case, defendant below is bound by the verdict, if the law is against him.—Dane Abr. c. 137, Art. 4, § 7 ; 8 Sergt. & R. 529. And I think there is no doubt that the law is with the appellee, and that the verdict and judgment are correct as rendered in the court below, except as to the order to pay the money to appellee's attorneys, which is here arrested.

Therefore, let the judgment of the court below, as corrected, be affirmed.

PECK, C. J., *(dissenting.)*—I. The novelty of the question here presented, at first blush, would seem to involve its de-

cision in more or less difficulty, but an examination of the several sections of the Revised Code having reference to this subject, at once dissipates this apparent difficulty.

1st. Let it be borne in mind that the right, if it may properly be called a right, of a head of a family to have any of his property exempted from levy and sale for the payment of his debts, is purely statutory in its character, and has no existence independent of the statutes by which it is given.

2d. Being a statutory right, it can only arise in the cases named in the statutes, and must be made within the time, and in the manner, and in the cases therein prescribed.

3d. It is a right, in every case, personal to the head of a family, and must be claimed by himself, and by no body else, and it must be made before a sale of the property; otherwise the right is lost. He can not claim or have the money arising from the sale, because the statutes do not say so.

4th. The claim is a pure matter of grace, and not of debt; therefore, the beneficiary must take what is given and be content; he can have nothing more. And this should be so, for the reason that it is of grace and not of debt; and for the further reason, that the State, in this matter, is generous—not with her own, but with what, on the highest principles of morality, should belong to another; for every dollar a debtor is in this way permitted to withdraw from the payment of his honest debts, is a dollar, first or last, taken from the pockets of the creditor.

The present enormous system of exemption laws, in the beginning, grew out of the purest feelings of philanthropy and good will, and was intended to help the poor, and to encourage them in the ways of honesty, industry and economy, and to secure to them the enjoyment of the common comforts and decencies of life, and thereby enable them to improve their condition.

For this purpose these laws wisely confined exemptions to a few necessary articles of daily family use, including among them the usual implements of husbandry, with a beast for the plow, and the tools of the mechanic; but this

system, which had its commencement in charity and good intentions, has been fed into its present unhealthy proportions by the false and hypocritical cries of sympathy on the part of· demagogues and time-serving politicians for the "poor dear people," until nearly all just sense of obligation and duty to observe honest promises has become demoralized, and amounts, in reality, to·almost an utter abrogation of all laws for the collection of debts. For it may be safely affirmed, 'that in no State or community is one-fifth of the people, as a body, at any one time worth the amount of property now exempted from execution.

The result of all this is, that the poor, instead of being benefitted by these laws, and their best good and prosperity promoted, are being seriously injured by the destruction of the trust and confidence that once existed, not only between them and their better-off neighbors, but also among themselves. Trust and confidence is the very life—the foundation of neighborhood commerce, without which no people, especially the poor, ever prospered or can prosper.

Moderate and discreet exemption laws are both just and right in themselves, and are, no doubt, a great benefit and blessing to that portion of the people for whom they were first intended; but, for myself, I desire to set my seal of disapprobation upon the extravagant lengths to which these laws have been extended by the legislation of this State.

II.   I will now refer to the sections of the Revised Code upon which this opinion is based. Section 2880 provides, that "the following property may be permanently *retained* for the use of every family in this State, exempt from *levy and sale*, by any legal process." Then follows a list and description of the property so exempted, both real and personal, the value of which, according to the very lowest estimate, can hardly be less than fifteen hundred dollars.

This would seem to be enough to enable a prudent and industrious family to make a comfortable living.

1st. This property is to be selected by the head of a family, and valued by three disinterested persons, to be selected by the sheriff, or other person *levying the process*. So stood the law on this subject until the 19th of February,

1867, when an act was passed which forms § 2884 of the said Code, by which twelve hundred dollars of real estate and one thousand dollars worth of personal property is added to the list of property then already exempted from levy and sale, for the use of the family.

By these sections we see that the property thus exempted is property *that may be levied upon and sold by the sheriff or other officer, under process in his hands for that purpose.*

2d. That only such property is exempted as shall be in the *possession of the head of the family at the time of the levy,* and which must be selected by him, after the levy, and before the sale thereof.

By section 2883, the value of the property so exempt must be ascertained by three disinterested persons summoned by the sheriff, or other officer *levying* the process. It follows, from this, that the property so exempt must be property, not only liable to be levied upon and sold, but must also be property possessed by the head of a family; for if not possessed, it can not be retained, and, furthermore, it must be levied upon before the sheriff, or other person levying the process, can proceed to have its value ascertained by the persons to be summoned for that purpose.

3d. The question now arises, what property may be levied on and sold, by execution or other legal process? By section 2871, Revised Code, we see that "*things in action*" can not be levied on and sold. By "things in action" is understood "choses in action." The word "choses" means things. All debts are choses in action, and, therefore, things in action are not liable to be levied on and sold, and, consequently, not such property as can be reserved or retained for the use of a family, under the exemption laws.

That was the purpose of the motion in this case. The appellee in the circuit court sought to have the money that might be collected by the appellant out of the property of the garnishee, on his judgment against the garnishee, paid to him, under the laws exempting certain property from levy and sale, for the use of his family. This could not

be done. The said judgment is not such property as is embraced within the purview and meaning of these laws. It was not, and could not be levied on and sold as property. It is not property in the sense of these laws, but a mere thing in action. The said judgment is in favor of the appellant, against the garnishee, and not against the appellee. It is the appellant's judgment, and an execution issued on it can not be levied on the appellee's property, but only on the property of the garnishee. He is not, therefore, entitled to have property levied on for its satisfaction, being the property of the garnishee, exempted from sale for the use of his family; and if he is not entitled to have the property so levied on, it is very certain he can not have the money that may be derived from its sale. The motion was without any legal foundation, and should not have been entertained by the court; consequently, the charge to the jury was erroneous.

NOTE.—The foregoing opinion was prepared as the opinion of the court, but not meeting with the approbation of my brethren, I read it as a dissenting opinion.

PECK, C. J.