**HIRAM TOWERS, Plaintiff**

**v.**

**ANITA TOWERS, Defendant**

# Civil No. 240/1970
# Territorial Court of the Virgin Islands

Judicial Div. of St. Croix

# March 23, 1979

210

211

ALBERT A. SHEEN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

GEORGE S. ELTMAN, ESQ., Legal Services of the Virgin Islands, Christiansted, St. Croix, V.I., *for defendant*

JOSEPH, *Judge*

# I. QUESTIONS PRESENTED

This case requires the court to characterize—as child support or alimony—the right of a former wife to occupy the marital home until the youngest child reaches 18 granted in a divorce decree in conjunction with custody of the children of the marriage.

This court must also determine whether certain factors, e.g., emancipation of one of the children, residency in the home by one not a child of the marriage, or remarriage and formation of a second family by the husband, justify a reduction in the responsibility of the husband to provide the shelter provided for in the decree.

For the reasons outlined below the court finds that in this case the wife's right to occupy the marital home until the youngest child reaches majority constitutes child support. The court further finds that there is not at this time a basis for reduction of the husband's responsibility to provide a home for the children of his prior marriage.

# II. THE PROCEEDINGS THUS FAR

On October 23, 1970, the plaintiff in the present action, Hiram Towers, was granted a divorce absolute from Anita Towers after entry of a default order by the District Court of the Virgin Islands (No. 240-1970). In the decree, custody of the five children of the marriage, Hiram, Jr., Damon, Pernell, Fabian and Elvis, was awarded to Hiram Towers, Sr., with visitation rights reserved to Anita Towers.

In September 1972, Anita Towers moved in the District Court for modification of the divorce decree. Mrs. Towers requested custody of the five children, payments for their support and maintenance, and title to the marital home at Plot 20, Sion Farm, St. Croix, U.S. Virgin Islands.[1] Mrs.

---

[1] Consisting of 5,193.76 sq. ft. as shown on P.W.D. Drawing No. 2538-1, together with a 3-bedroom dwelling situated thereon.

Towers had by quitclaim deed dated May 29, 1970, released all of her rights to the Sion Farm property.

On October 21, 1972, the District Court ordered that custody of the five minor children be awarded to Anita Towers; that Hiram Towers pay child support in the amount of $15.00 per month per child until each child reached the age of eighteen; and that Hiram Towers vacate and make available to Anita Towers and their five children the aforementioned Sion Farm property. Mrs. Towers and the children were to have the right to occupy the home until the youngest child reached eighteen years, at which time all rights of occupancy were to revert to Hiram Towers. Mr. Towers was further ordered to continue payment of the mortgage, real property taxes, home insurance, and to make structural repairs on the house. Mrs. Towers was ordered to pay utilities and take care of day-to-day maintenance.

Hiram Towers has now filed in this court a petition for modification of the October 21, 1972, Amended Decree. Specifically, he asks that the right to occupy the Sion Farm house be restored to him or, in the alternative, that the court delete the portions of the Decree making him responsible for the mortgage, real property taxes, insurance and structural repairs. Petitioner asks that those responsibilities be made those of Mrs. Towers so long as she occupies the house.

## III. CHARACTERIZATION OF THE RIGHT TO OCCUPY THE MARITAL HOME

Petitioner argues that the grant of the right to occupy to Mrs. Towers is equivalent to alimony, that the absence of an express reservation of alimony in the divorce decree resulted in a waiver and that petitioner should not be required to provide alimony to respondent in the form of shelter. The 1970 divorce decree did have a clause that alimony "is expressly waived and denied forever"; however,

214

that clause was struck and initialled by the judge who granted the decree.

██ Alimony must be expressly waived by a party in open court or in the pleadings before that party will be barred from claiming it. When the decree is silent as to alimony, as it is here, there is no waiver.

In the first memorandum of law submitted by respondent to this court, it was argued that the right to occupy the marital home in this case was alimony and that there are exceptions to the rule that requires that claims for alimony be raised during the divorce proceedings. Respondent argues that, by not ruling on Mr. Towers' demand that respondent specifically be denied alimony, the District Court intentionally left the issue open in the original decree and made a direct award of same in the amended decree.

In a supplemental Memorandum of Law, respondent asserts that the right to live in the house is both alimony and child support, and suggests now that petitioner's position is that the award is solely child support. Respondent urges that petitioner's remarriage and the fact that all of the children no longer live with respondent are not conditions justifying the relief prayed for by the petitioner.

This court has considered the arguments put forth by the parties and has consulted the authorities, and finds that it disagrees to some extent with both parties as to the characterization of the right to occupy the marital home in this case.

In a number of instances courts have granted the wife in a divorce action either full title, an estate until remarriage or an estate for life in the marital home,[2] especially, but not always, where the wife was granted custody of the children. Such a grant has traditionally been regarded as alimony, division of property rights or settlement of property although it benefited the children as well.

---

[2] Woodall v. Woodall, 144 Ark. 159, 221 S.W. 463 (1920).

Granting to the wife the right to occupy the home only until the youngest child reaches majority, while requiring the husband to pay taxes, insurance and mortgage, is a more recent phenomenon which has yet to be characterized in Virgin Islands case law. The court, therefore, reaches its conclusions by consulting other sources.

■ There is a strong presumption in favor of a finding of child support as opposed to alimony where the decree is not specific.

■ While Title 16 V.I.C. § 342 imposes on parents the *unavoidable obligation* to support their children until they reach the age of 18, "[a] duty to support a former wife ordinarily arises only out of an obligation imposed by the court in divorce proceedings. . . . Certainly the Virgin Islands statutes do not impose upon the former husband after divorce the duty to support his former wife, except as such support is imposed by the decree of divorce." Lorillard v. Lorillard, 5 V.I. 483, 488, 358 F.2d 172, 175 (3d Cir. 1966) (citations omitted).

■ The form in which the support is provided is not necessarily determinative of its nature. Section 341 of Title 16 defines "support" as "all that is indispensable for maintenance, housing, clothing and medical attention according to the social position of the family." As to the matter of support, the statute (Title 16 V.I.C. § 348) provides that "The person obliged to render support may either pay the amount required or receive and maintain in his own dwelling the person having a right to such support."

■ Though the usual manner of support is cash payments directly to the party with custody, it is the opinion of this court that support may be provided indirectly by payments made which result in provision of necessary elements of support. It is uncontroverted that shelter is a necessity and it is often more economical for the supporting

parent to provide residence in the marital home for the children rather than cash payments to be applied to housing. In an Oklahoma case where the wife received custody of the children and the couple's equity in the marital home, which carried with it the mortgage indebtedness, the husband challenged the award of the house as inequitable. The court said in its opinion, however, that ". . . without this furnished home, providing the children with a place to live, the expenses of supporting them for which defendant as their father is legally responsible, might be considerably increased."[3]

In a later case, the Court of Appeals of North Carolina held that the statutory term "support payments" is not limited to monetary payments but can include transfer of an interest in real or personal property as part of an order for support of a minor child.

While applicable statutes employ the term "support payments" in several instances, we do not believe the General Assembly intended to restrict child support to monetary payments. . . . Certainly, shelter is a necessary component of a child's needs and in many instances it is more feasible for a parent to provide actual shelter as part of his child support obligations than it is for the parent to provide monetary payments to obtain shelter.[4]

The convenience of providing shelter does not automatically place it in the category of child support, but an examination of other evidence in this case points to that conclusion. First, the court gave the respondent the right to occupy the house *in conjunction with* granting her custody of the children. When the original decree was entered, giving custody to petitioner Hiram Towers, Mrs. Towers was granted no right to live in the house. Respondent's right to occupy the house arose only when she was granted custody and exists *only* until the youngest child reaches 18 years, and not a minute more. Since respondent gave

---

[3] Irwin v. Irwin, 416 P.2d 853 (Okla. 1966).
[4] Boulware v. Boulware, 23 N.C. App. 102, 208 S.E.2d 239, 240 (1974).

petitioner a quitclaim deed for the Sion Farm house prior to the divorce, full title to the house rests with petitioner throughout the period of occupancy, and he has the right to resume occupancy as soon as the last child is grown. Respondent's right to occupy is inextricably bound to her having custody of the children.

■ Second, given petitioner's income and the high cost of living in the Virgin Islands, monetary support in the amount of $60.00 per month for all 4 children[5] could not rationally be considered adequate child support in and of itself. Common experience would tell us that respondent is required to spend a good deal more than $60.00 every month to adequately feed and clothe four children, much less provide them with school supplies and incidentals. It is not illogical or unreasonable to find in this case that the shelter that petitioner was ordered to provide is indeed a part of his child support responsibilities. Third, child support does not become less so because the mother with custody benefits as well.

Although a mother may benefit indirectly from child support payments, she is not the real party in interest. . . .[6]

## IV. PETITIONER'S CLAIMED BASES FOR REDUCTION OF SUPPORT BENEFITS

Petitioner asks the court to restore to him the use of the house at Sion Farm or, in the alternative, to relieve him of the responsibility to pay the mortgage, taxes, insurance and costs of repairs, assigning these responsibilities to respondent during her period of occupancy.

Petitioner puts forth a number of circumstances which did not exist when the Amended Decree was signed as jus-

---

[5] Hiram Towers, Jr., born October 2, 1959, has reached majority and is no longer entitled to support of $15.00 per month from his father.

[6] Alber v. Alber, 93 Idaho 755, 472 P.2d 321, 325 (1970): Court rejected father's argument that ex-wife waived right to child support by not requesting it during the proceedings, though aware that she was pregnant at that time.

tification for his petition. The court will examine them in turn.

A. Petitioner has remarried and now has the additional burden of support for a child aged eight months.

■ Since his divorce from respondent, petitioner has re-married and has a child of that marriage. Those facts, how-ever, are not grounds, in and of themselves, for reduction of child support payments,[7] although the court should con-sider the needs of the children of the current marriage.[8] Here, petitioner's responsibilities to his first family require payment of $60.00 a month in support payments and a mortgage payment of $115.00 per month on the Sion Farm house.[9] The sum of $175.00 a month breaks down to $43.75 per child per month and is not unreasonable in light of the cost of living in the Virgin Islands.

■ Nor is that amount impracticable, given petitioner's circumstances. Hiram Towers testified that his biweekly take-home pay was $281.56, which comes to approximately $563.12 per month. He further testified to living expenses of approximately $562.00 per month, including the $60.00 in support, and a mortgage of $293.00 on his present home,[10] which would appear to indicate that there are no funds available for the first mortgage on the Sion Farm house. However, the court can require that reasonable sup-port payments be made, even if the husband has to make some sacrifices, as long as he is able to provide for himself adequately. Armstrong v. Armstrong (D.C.V.I., Div. of St. Croix, Jan. 30, 1978).

[7] Testut v. Testut, 34 N.J. Super. 95, 111 A.2d 513 (1955); Miller v. Miller, 124 Vt. 76, 197 A.2d 488 (1964); Lewis v. Lewis, 73 Idaho 165, 248 P.2d 1061 (1942).

[8] Renn v. Renn, 318 Mich. 230, 27 N.W.2d 618 (1947); Green v. Green, 232 Ark. 868, 341 S.W.2d 41 (1960); Phillips v. Phillips, 162 Neb. 649, 77 N.W.2d 152 (1956).

[9] There was no evidence presented to show the amounts paid by petitioner for taxes and insurance on the Sion Farm house.

[10] Also included are bank loan of $109.00; child care $80.00; and gas $20.00. The down payment for petitioner's present home came from a second mortgage on the Sion Farm house.

■■■■ This court has the power to modify the provisions of its support orders on application of either party.[11] Such modification, however, is discretionary with the court, and is based on the considerations put forth in Title 16 V.I.C. § 345, to wit:

> The amount provided for support shall be proportioned to the resources of the person giving such support and to the necessities of the party receiving it, and shall be reduced or increased in proportion to the resources or the necessities of the latter.

Because "the original decree should be treated as a final adjudication of the rights of the parties at the time it is entered, and the court which entered it should be presumed . . . to have given appropriate consideration to the circumstances which should have affected its judgment,"[12] the court to which application is made should require that "a party seeking modification of [a] . . . decree . . . allege such a *substantial and continuing* change of circumstances since entry of the original decree as to make continued enforcement of that decree unfair." Viles v. Viles,[13] supra (emphasis added).

It does not appear to this court that continued enforcement of the provisions in the Amended Decree would be unfair. True, petitioner's circumstances have changed.

> Viles makes it clear, however, that in this jurisdiction the financial burden resulting from the support of a second spouse cannot justify modification of a divorce decree. . . . Therefore, to the extent that [the father's] difficulties are attributable to the support of his second wife, this court believes it should refuse to consider them. . . . It would defeat the objective of Viles and endanger the rights and welfare of dependent spouses and children if a party was free to take leave of past familial responsibilities, however burdensome, for more attractive current and future ones. Emanuel v. Emanuel.[14]

---

[11] Title 16 V.I.C. § 110—modification of final orders.

[12] Viles v. Viles, 4 V.I. 415, 422, 316 F.2d 31, 34 (3d Cir. 1963).

[13] 4 V.I. at 421, 316 F.2d at 34 (3d Cir. 1963). See also Holesinger v. Holesinger, 252 Iowa 374, 107 N.W.2d 247 (1961); Keyser v. Keyser, 193 Iowa 16, 186 N.W. 438 (1922).

[14] 15 V.I. 103, 113–14 (D.C.V.I. 1978).

220

As to petitioner's responsibilities towards the child of his second marriage, the authorities are not so rigid. A child is due the support of its father, whether born of the first or a subsequent marriage, and the court should consider that petitioner testified to payments of $80.00 per month for care of the child of his current marriage. There was no other evidence presented as to the expenses incurred for that child, though it is possible that other expenditures are made by petitioner and his current wife. However, this court has taken note of the fact that petitioner claims to spend more per month to care for one infant than he pays in direct support of his four older children. Petitioner has failed to show how the change in his family status should justify a modification.

B. Petitioner has found it necessary to buy a new home with mortgage payments of $293.00 per month.

The fact that the husband has purchased a new home for himself and his new wife and must make large mortgage payments is not entitled to serious consideration on a petition for reduction of support payments.[15] Even if there is no bad faith implicit in the reduction of the father's resources, where the amount of expenditure is within the father's power of control, there is no justification of a reduction.[16]

A man might become heavily indebted in order to acquire assets for himself, and such indebtedness would be no cause for a reduction in his alimony payments to support his former wife and minor children.[17]

It is conceded that Mr. Towers has the responsibility of providing a home for his current family. However, his duties under the divorce decree were known to him when he

---

[15] Reynolds v. Reynolds, 79 R.I. 163, 85 A.2d 565 (1952).

[16] Grant v. Grant, 223 Ark. 757, 268 S.W.2d 617 (1954).

[17] Welch v. Welch, 213 Ga. 589, 100 S.E.2d 431, 434 (1957). See also Webber v. Webber, 156 Fla. 396, 23 So.2d 388 (1945); Brown v. Brown, 62 R.I. 375, 6 A.2d 144 (1939).

bought his present home and should have been a factor in deciding on the type of home he could afford.

There is a further basis for requiring that Mr. Towers assume full responsibility for the mortgage, taxes and insurance on the Sion Farm house. Mr. Towers and his current wife are the sole owners of that home, the respondent having given up her interest by a quitclaim deed executed before the parties were divorced. Mr. Towers and his current wife, therefore, are building up equity in their own property and enhancing their assets while also providing shelter for his children. If he sells the Sion Farm home when respondent vacates, petitioner and his current wife will realize all of the proceeds of that sale. Nothing will accrue to respondent. It has been held that where the divorced wife has the right to occupy until the children are grown and then has a right to a portion of the proceeds on the sale of the property, that the divorced wife should contribute proportionately to the payments for mortgage, taxes and insurance while she occupies the house.[18] That is not the case here.

C. Respondent is now employed full time and is now capable of providing financial support for herself and the minor children.

It has generally been held that a court will not, on a father's petition for reduction of support, take into account that a mother who has custody has, after the decree, obtained employment.[19] This is particularly true where the mother's income is small, she has been contributing, since the divorce, to the support of the children, and will of necessity continue to contribute to their support because the father's contribution is so small.[20] Here, where

---

[18] Ledyard v. Ledyard, 46 Ala. 27, 237 So.2d 511 (1970); Girard v. Girard, 521 S.W.2d 714 (Tex. Ct. Civ. App. 1975).

[19] Holbrook v. Holbrook, 116 Utah 114, 208 P.2d 1113 (1949).

[20] Tighe v. Tighe, 251 Iowa 1394, 105 N.W.2d 495 (1960).

the support payments are low, and there is no evidence to show that the mother's employment yields a large income, there is no basis for reduction.

D. Respondent has an adult child, not an issue of the marriage of the parties, who resides with respondent. Such adult child is capable of contributing to the support of the minor children.

The Virgin Islands Code, Title 16 § 342(b), imposes the obligations of support on brothers and sisters only under certain circumstances:

... (b) Brothers and sisters also owe to their brothers and sisters, even when only on the mother's or father's side, the aid necessary to maintain their existence, when through a physical or mental defect or for any other cause not the fault of the person requiring support, such person can't provide for himself.

 It is unarguably established, both by statute[21] and by uncountable cases[22] based on statutes and the common law, that the primary responsibility of support of children rests with the father and mother of those children and that responsibility devolves on others only when the parents are unable to fulfill it.

 The presence in the home of Mrs. Towers' adult child by a previous marriage does not in any way lessen the responsibility of petitioner or respondent to support the minor children of their marriage.

E. Reduction in the number of the parties' children residing with respondent.

Though not an issue raised in the petition for modification, the petitioner raised at the hearing the question of a right to reduction of shelter expenditures, based on the claim that some of the children are no longer living with respondent at Sion Farm.

---

[21] Title 16 V.I.C. § 342(a)(3).
[22] D.J.S., Divorce, § 319(1) (1959); 59 Am.Jur.2d, Parent and Child, §§ 50–52 (1971).

It has been held in a number of cases that an undivided amount ordered to be paid for support of several children is not automatically reduced when some of the children become ineligible due to emancipation or attainment of majority. In a Michigan case, the father had been ordered to pay $15.00 per week for the support of 4 minor children. He petitioned for reduction when three of the children had attained majority and only one minor child remained in the home. The Supreme Court of Michigan upheld the lower court's refusal to reduce the amount. It found that a home still had to be maintained for the remaining child and that $15.00 per week was not an unreasonable amount for that purpose.[23]

In an opinion entered on December 7, 1978, the District Court of the Virgin Islands, Division of St. Thomas and St. John,[24] found that the analysis of a modification petition as provided for in Viles v. Viles, supra, would preclude pro rata reduction of support payments just because one of the children reached 18 years.

It is anticipated that the minor children of a marriage will leave the home at majority or sometime sooner and it was within the purview of the court in entering the amended decree in this case to provide for a reduction in petitioner's contribution towards a home for his first family. It is especially clear that the court in the present case intended no change in the provisions regarding the home when we consider that it specifically provided that payment of the *monetary* support cease when each child reached majority.

There is also the question of the near impossibility of attempting to make proportional reductions in any entity as resistant to division as the right to live in a specific house.

---

[23] Jansen v. Jansen, 296 Mich. 296, 296 N.W. 263 (1941).
[24] Emanuel v. Emanuel, 15 V.I. 103 (D.C.V.I. 1978).

It is clear from a reading of Emanuel, supra,[25] that the courts have resisted automatic pro rata reduction of undivided *monetary* support.

■ Common sense tells us that there should be even greater resistance in a case such as we have here. The children who remain with Mrs. Towers are still entitled to shelter as provided for in the amended decree, and this court in its discretion finds that the facts as they now appear make modification inappropriate.

### ORDER

This action came on for hearing on October 24, 1978, petitioner appearing personally and by his counsel, Albert A. Sheen, Esq., and respondent appearing personally and by her counsel, George S. Eltman, Esq. The premises considered and the court being fully advised, and in accordance with the Memorandum Opinion entered herein, it is hereby

ORDERED that the Petition for Modification of Decree be and the same is hereby DENIED.