# Mangan *v.* The State.

*Indictment under Local Statute for Buying Seed-Cotton.*

1.   *Legislative power ; local laws.*—Except as restrained by constitutional provisions, State and Federal, the General Assembly has the same plenary power of legislation as the British Parliament, subject to the qualification that the power is purely legislative in its character ; and there is no constitutional inhibition upon the power to enact laws operating only within certain designated boundaries or counties, different from the general laws operating in other portions of the State.

2.   *Local law prohibiting transportation of seed-cotton by night.*—The second section of the special statute approved February 1st, 1879 (Sess. Acts 1878–9, p. 206), prohibiting the transportation by night, within the counties and boundaries specified, of " any cotton in the seed," is a legitimate exercise of the police power, is not an unauthorized interference with the rights of private property, and is not violative of any con-

[Mangan v. The State.]

stitutional provision. (Re-affirming *Davis v. The State*, 68 Ala. 58–65.)

3. *Local law prohibiting sale of seed-cotton.*—The first section of said special statute, which makes it " unlawful for any person to sell, or offer for sale, barter, exchange or buy," within the counties and boundaries specified, " any cotton in the seed," or elsewhere to buy, sell, &c., any cotton in the seed raised within said counties, is also a legitimate exercise of the police power, is not an unauthorized interference with the rights of private property, and is not violative of the Fourteenth Amendment to the Federal constitution, nor of the 37th section of the Declaration of Rights in the State constitution.

FROM the Circuit Court of Lowndes.

Tried before Hon. JOHN MOORE.

The indictment in this case charged, in the first count, that the defendant " did knowingly buy, in said county of Lowndes, cotton in the seed, the property of J. C. Light ;" in the second count, that he " did knowingly buy, in said county of Lowndes, from Frank Wright, cotton in the seed, the property of J. C. Light ;" in the third, that he did "knowingly buy, in said county of Lowndes, from Frank Wright, cotton in the seed, which said cotton was produced in Lowndes county, and was the property of J. C. Light ;" and in the fourth, that he " did knowingly buy, from Frank Wright, cotton in the seed, which was produced in the county of Lowndes, and was the property of J. C. Light."   There was a demurrer to the indictment, on the ground that the special statute under which it was framed is unconstitutional ; but the record does not show any action of the court upon it.   After conviction, the defendant moved in arrest of judgment, " on the ground that the indictment charges no offense ;" and the overruling of this motion is here urged as error.

The statute under which the indictment was found is entitled " An act to prevent, in certain cases, the sale, exchange, and transportation of cotton, in the counties of Montgomery, Bullock, Dallas, Russell, Lowndes, Wilcox, Sumter, Antauga, and in beats Nos. one, two, three, four, five, six, seven, eight and nine of Hale, and of cotton produced in said counties," approved February 1st, 1879; the first section of which is in these words :   " *Be it enacted,*" &c., " that it shall not be lawful for any person to sell, or offer for sale, barter, exchange or buy, in the counties of Montgomery, Bullock, Dallas, Russell, Lowndes, Sumter, Antauga, and in beats Nos. one, two, three, four, five, six, seven, eight and nine of Hale, any cotton in the seed, or buy any cotton in the seed which is produced in the counties of Montgomery, Bullock, Dallas, Russell, Lowndes, Wilcox, Sumter, Antauga, and in beats Nos. one, two, three, four, five, six, seven, eight and nine of Hale ; *provided*, this section shall not be construed to apply to any sale of cotton made under any legal process, or under the order of any court, nor to any sale

of cotton at public auction in any mortgage or deed of trust, nor to the delivery or surrender of cotton by any tenant to his landlord in payment of his rent or advances, nor to cotton delivered by one tenant in common or joint tenant to another on division of the crop."—Sess. Acts 1878-9, pp. 206-7.

R. M. WILLIAMSON, and W. C. GRIFFIN, for appellant.—The first section of the local law, under which this indictment was framed, contains two restrictions upon the right to dispose of cotton in the seed : 1st, its sale, barter, &c , within the designated districts, no matter where it was raised ; 2d, the sale, &c., elsewhere, of any cotton in the seed raised within those particular boundaries ; and each of these inhibitions, it is insisted, is a palpable violation of the citizen's right to dispose of his property.  The right to enjoy his property goes far beyond the mere possession or personal use of it, and necessarily includes the right to .sell and dispose of it.  Cotton is raised, as the court judicially knows, almost exclusively for sale ; and to take away the right to sell it affects its marketable value, and amounts to confiscation.  " The sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty, and property; and when the government assumes other functions, it is usurpation and oppression."—Const. Ala. 1875, art. I, § 37.  The case of *Dorman v. The State*, 34 Ala. 216, if it can be justified under the constitutional provisions then in force, can not stand the test of the more cautiously worded provisions since adopted, and the additional safeguards thrown around private rights by the Fourteenth Amendment to the Federal constitution.—*Railroad Co. v. Morris*, 65 Ala. 193 ; *Green v. The State*, 73 Ala. 26 ; *Joseph v. Randolph*, 71 Ala. 499 ; Cooley's Const. Lim. 576, top.

T. N. McCLELLAN, Attorney-General, for the State, cited *Davis v. The State*, 68 Ala. 61 ; *Dorman v. The State*, 34 Ala. 216.

CLOPTON, J.—The defendant was indicted under the first section of " An act to prevent, in certain cases, the sale, exchange, and transportation of cotton in the counties of Montgomery, Bullock, Dallas, Russell, Lowndes, Wilcox, Sumter, Autauga, and in beats Nos. one, two, three, four, five, six, seven, eight and nine of Hale, and of cotton produced in said counties."—Acts 1878-9, 206.  In *Davis v. State*, 68 Ala. 58, where the constitutionality of the second section of the act was in question and considered, it was held, that the legislature of the State has the same plenary power of legislation as the British Parliament, except as restrained by the Federal and

[Mangan v. The State.]

State constitutions, subject to the qualification, that the power is purely legislative in its character ; that there is no constitutional inhibition upon the power to pass laws operating in certain designated counties or localities, different from the general laws operating in the other parts of the State; and that the second section of the act is not an unauthorized interference with the rights of private property, is a police regulation, and a legitimate exercise of legislative power. With the conclusions there attained we are content, and being satisfied with the reasoning, as equally applicable to the question presented in the present record, would have deemed further discussion unnecessary, were it not seriously insisted, that the first section of the act violates the Fourteenth Amendment to the constitution of the United States, and section 37 of the Declaration of Rights.

It is not urged that the section is prohibited by the provision of the amendment that forbids any State to deprive any person of life, liberty or property, without due process of law. This was determined adversely to appellant in the cases of *Dorman v. State*, 34 Ala. 216, and *Davis v. State*, *supra*, as respects th's limitation upon the legislative power by the State constitution. And in *Munn v. Illinois*, 94 U. S. 113, C. J. WAITE, after considering the term "due process of law," as previously understood, observes : " From this it is apparent that, down to the time of the adoption of the Fourteenth Amendment, it was not supposed that statutes regulating the use, or even the price of the use, of private property, necessarily deprived an owner of his property, without due process of law. Under some circumstances they may, but not under all. The amendment does not change the law in this particular ; it simply prevents the State from doing that which will operate as such deprivation."

The proposition pressed by counsel is, that the first section of the act is obnoxious to the inhibition of the amendment, that "no State shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States." Without reference to the history of the amendment, the circumstances under which, and the special purpose for which it was adopted, it is manifest that it does not create or confer any new or additional privileges or immunities. It operates on those already existing, and which may be conferred or recognized by the States—the privileges and immunities meant and embraced by the same terms as elsewhere and previously used in the constitution. In *Bartemeyer v. Iowa*, 18 Wall. 129, MILLER, J., said : " But the most liberal advocates of the rights conferred by that amendment have contended for nothing more, than that the rights of the citizen previously

existing, and dependent' wholly on State laws for their recognition, are now placed under the protection of the Federal government, and are secured by the Federal constitution." The privileges and immunities guaranteed to the citizens of the United States are fundamental, and belong of right to the citizens of every free government—life, liberty, property, and the pursuit of happiness. Mr. Justice Washington said, they "may all, however, be comprehended under the following general heads: protection by the government, with the right to acquire and possess property of every kind, and to possess and obtain happiness and safety, subject, nevertheless, to such restraint as the government may prescribe for the general good of the whole."—*Corfield v. Corgell*, 4 Wash. C. C. R. 371. These fundamental privileges and immunities are inherent in the citizenship of every well organized republic, and are beyond the object and end of government, other than for protection. This principle is expressed in our Declaration of Rights as follows: "That the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty and property; and where the government assumes other functions, it is usurpation and oppression." Independent and irrespective of the Fourteenth Amendment, the States are without legislative power to abridge these vital and fundamental privileges and immunities, though they may confer and withdraw other and additional ones.

It must not be supposed, however, that the State government is without power to give the adequate protection, which is its "sole object and only legitimate end." The constitution does not inhibit the police power, as generally received and understood, without which the government would be powerless to perform its proper and legitimate functions. This power is necessary for the protection of the lives, health and comfort of persons, and for the protection of property. Every member of the community, over which there is an established and organized government, assumes the obligation to so use his property as not to interfere with or injure the enjoyment of their property by other members, having equal rights. "Rights of property, like all other social and conventional rights, are subject to such limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient."—*Commonwealth v. Alger*, 7 Cush. 53.

We will not undertake, what others have found difficult, to fix the boundaries and define the limits of the police power. The line of demarcation between the legitimate exercise of the

[Mangan v. The State.]

power, and unauthorized interference with the rights of persons and of private property, is often dim and shadowy. A large discretion must necessarily be left with the legislature. In his very able dissenting opinion in *Munn v. Illinois, supra,* Mr. Justice Field said : " It is true, that the legislation which secures to all protection in their rights, and the equal use and enjoyment of their property, embraces an almost infinite variety of subjects. Whatever affects the peace, good order, morals and health of the community, comes within its scope; and every one must use and enjoy his property subject to the restrictions which such legislation imposes. What is termed the police power of the State, which, from the language often used respecting it, one would suppose to be an undefined and irresponsible element in government, can only interfere with the conduct of individuals in their intercourse with each other, and in the use of their property, so far as may be required to secure these objects." And in *Bartemeyer v. Iowa, supra,* he said : " I have no doubt of the power of the State to regulate the sale of intoxicating liquors, when such regulation does not amount to the destruction of the right of property in them. The right of property in an article involves the power to sell and dispose of such article, as well as to use and enjoy it. Any act which declares that the owner shall neither sell it, nor dispose of it, nor use and enjoy it, confiscates it, depriving him of his property without due process of law. Against such arbitrary legislation by any State the Fourteenth Amendment affords protection. But the prohibition of sale in any way, or for any use, is quite a different thing from a regulation of the sale or use so as to protect the health and morals of the community. All property, even the most harmless in its nature, is equally subject to the power of the State in this respect with the most noxious."

The right to dispose of property is not an absolute and unqualified right. It had its origin in the needs and exigencies of organized societies, and is subject to such restraints and regulations as may be necessary to the general peace and good order.—*Dorman v. State, supra ; Davis v. State, supra.* On this principle is based the validity of all laws regulating the sale of spirituous or vinous liquors, the alienation and conveyance of property, establishing markets and market hours, regulating the sampling and weighing of cotton, prohibiting the carrying on business without a license, and many others, unnecessary to mention. The first section of the act under consideration does not destroy the property in the cotton, nor does it deny the right to sell, use, and enjoy it. It leaves unimpaired and unabridged the substantial right of sale and enjoyment. The prohibition is restricted to *"cotton in the seed."*

[Cox v. The State.]

We know that "cotton in the seed," is not the marketable condition of the article. The laws of trade and commerce require that it should be manipulated and converted into what is commonly known as "*lint cotton.*" In this condition it is most saleable, useful and enjoyable. The act does no more, and goes no farther, than to regulate the sale, and requires the owner to put it in a vendible condition. We quote and reaffirm what was said in *Davis v. State:* "The primary object of this law. is not to interfere with the rights of property, or its vendible character. Its object is to regulate traffic in the staple agricultural product of the State, so as to prevent a prevalent evil, which, in the opinion of the law-making power, may have done much to demoralize agricultural labor, and destroy the legitimate profits of agricultural pursuits to the public detriment, at least within the specified territory. This the legislature had the power to do." The constitutionality of the act is founded on the police power of the State; the necessity of such legislation, its propriety, justice and wisdom, being a matter for legislative determination.

Affirmed.