# Stein *v.* Leeper.

*Application for Mandamus to Probate Judge, refusing to grant License for Retailing Spirituous Liquors.*

1. *Constitutional provision (Art. IV, § 19) as to alteration or amendment of bills.*—Under the constitutional provision which declares that no bill "shall be so altered or amended on its passage through either house as to change its original purpose" (Art. IV, § 19), it may be that a bill which, as originally introduced, provided for a prohibition of the sale of spirituous liquors in several specified localities, can not be so changed, by amendment or substitute, as to become a general prohibitory law; but the addition of other particular localities does not change the original purpose of the bill, and does not render the law obnoxious to this provision.

2. *Constitutional provision (Art. IV, § 2) as to title and subject of law.* The constitutional provision which declares, "Each law shall contain but one subject, which shall be clearly expressed in its title" (Art. IV,

| 78 | 517 |
| 94 | 96 |
| 78 | 517 |
| 96 | 210 |
| 78 | 517 |
| 99 | 221 |
| 78 | 517 |
| 101 | 544 |
| 78 | 517 |
| 109 | 31 |
| 78 | 517 |
| 139 | 642 |

§ 2), is mandatory; but it will not be construed and enforced so exactingly as to embarrass or obstruct legislation.

3. *Variance in title between original and enrolled bill.*—A material variance in the subject as expressed in the title, between the bill which actually passed the two houses of the General Assembly, as shown by the legislative journals, and the enrolled bill which received the executive approval and signature, is fatal to the entire law; but this effect will not be allowed to an omission, from the title of the enrolled and approved bill, of words which were included in the title as it passed the two houses, when the omitted words do not change the substance and effect of the law, or when the other portions of it can have full operation without reference to the omitted words.

4. *Constitutionality of local prohibitory law of February 17, 1885.* The act approved February 17th, 1885, entitled "An act to prevent the sale, giving away, or delivering or otherwise disposing of any spirituous, vinous or malt liquors, intoxicating bitters, or any other intoxicating drinks, at or within the localities hereinafter designated," specifying more than sixty places (Sess. Acts 1884-5, p. 570), is not unconstitutional because of the fact, shown by the legislative journals, that the original bill specified only three places in one county, the other places being added by amendment; nor does the omission from the title of the bill, as enrolled and approved, of one particular locality which is mentioned in the body of the act, and which was also included in the title of the bill as passed by the two houses, destroy the validity of the act as an entirety.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This was an application by petition on the part of D. Stein, for a writ of *mandamus* against Hon. J. T. LEEPER, the probate judge of Shelby county, requiring him to issue to the petitioner a license to retail spirituors liquors in the town of Calera in said county, on his compliance with all the requisitions of the law governing the issue of such licenses. An answer to the petition was filed by the defendant, justifying his refusal to issue the license under the provisions of the local prohibitory law approved February 17th, 1885 (Sess. Acts 1884-5, p. 570); waiving the issue of an alternative writ, and consenting that the legal questions involved might be determined by the Circuit Court of Montgomery. The court refused the *mandamus*, holding that the said statute was constitutional and valid, and dismissed the petition; and its judgment is now assigned as error. On the first argument of the case, an opinion was delivered affirming the judgment, on the ground that the Circuit Court of Montgomery had no jurisdiction of the case; but that opinion was withdrawn, on application for rehearing, and the opinion herewith published was filed.

TROY, TOMPKINS & LONDON, for the appellant, cited the legislative journals showing the changes made in the bill while pending before the General Assembly, the constitutional provisions contained in the 2d and 19th sections of the 4th

[Stein v. Leeper.]

Article, and the following authorities: Cooley's Const. Lim. 175, 176; *State v. County Judge*, 2 Iowa, 282; *Conner v. Mayor*, 5 N. Y. 293; *Davis v. State*, 7 Md. 151; *State v. Wilson*, 7 Ind. 516; 11 Ind. 199; *Ballentyne v. Wilkersham*, 75 Ala. 533; *State v. Harrison*, 11 La. Ann. 722; 72 Penn. St. 192; *Chiles v. Monroe*, 4 Metc. Ky. 72; *Jones v. Hutchinson*, 43 Ala. 721; *Moog v. Randolph*, 77 Ala. 597.

CLOPTON, J.—On consideration of the application for a rehearing, we have concluded to pass on the constitutionality of the statute, on which the judge of probate justifies his refusal to issue the license, without deciding the question of jurisdiction; inasmuch as the judge of probate submitted to the jurisdiction of the Circuit Court of Montgomery county, and consented that the court might hear and decide the questions involved; and as an early decision on the merits is urged, as important to the interests of the public, and of the parties.

The act in question was first introduced in the House of Representatives as a bill "to prevent the sale, giving away, or otherwise disposing of any spirituous, vinous or malt liquors, intoxicating bitters, or any other intoxicating drinks," in three different localities in Tuscaloosa county.—Acts 1884-5, p. 570. The committee, to whom the bill was referred, reported a substitute. By the substitute, and subsequent amendments, a large number of other localities, in different counties, were added to the bill. It is contended, that the passage of the act was in violation of section 19 of article 4 of the constitution, which provides: "No law shall be passed except by bill, and no bill so altered or amended on its passage through either house as to change its original purpose." The committee, to whom a bill is referred, may report it back, with or without amendments, and may report an amendatory or substitutional bill, if the effect is not to change its original purpose. The original purpose of the bill, as first introduced, is expressed by the subject of its title—the prohibition of the sale, giving away, or otherwise disposing of spirituous, vinous or malt liquors, or intoxicating bitters or drinks. It is true the prohibition only extended, by the original bill, to designated localities, showing that the purpose was, not to make the prohibition general throughout the State, but a local prohibition. Whilst it may be that such a bill could not be altered or amended so as to make the prohibition general, the purpose of the bill is not changed by increasing by amendment the number of localities. The original purpose—*local prohibition*—remains unaltered. Such amendments are merely extensions, and not changes of the purpose. The settled construction of the constitution is, that it contains no prohibition, express or implied, on the

legislative power to make special laws, applicable to one or more designated counties or localities, varying in their provisions from the general law.—*Davis v. The State*, 68 Ala. 58; *Mangan v. The State*, 76 Ala. 60. The practice, under the constitution and its judicial construction, has been to accomplish this by one bill. In *Block v. The State*, 66 Ala. 493, the title of the act was, "To prohibit the sale, giving away, or otherwise dealing in spirituous, vinous, or malt liquors, within three miles and a half" of two designated churches, located in different counties. It is said: "The fact that the prohibition embraces two separate localities avails nothing. The subject of the act is single, and relates only to retailing spirituous, vinous, or malt liquors. The objection would be just as valid, that the act embraces more than one kind of liquors." The argument of counsel goes to the extent of requiring a separate act as to each locality, within which the prohibition is to operate. Such construction would greatly hinder and embarrass legislation, and should not be enforced, unless compelled by express terms, or clear implication.

It is further urged, that the act as enrolled, and signed by the presiding officers of the two houses, and approved by the Governor, is not the same act as passed by the General Assembly. The contention is founded on the fact, that in the title of the act, as passed by the General Assembly, the words "within three miles of Antioch Church in beat No. 6 in Jefferson county," are included, while they are omitted in the title as enrolled, and as the act was approved by the Governor. The words occur in the enactment, as distinguished from the title, both as passed by the General Assembly, and as enrolled and approved. In considering this objection, we must keep in view the settled rule, that the presumption is in favor of the constitutionality of a statute, and of its passage in compliance with the forms and requirements of the constitution; and will not be declared otherwise, unless the mind of the court is clearly convinced. If the question is doubtful, the presumption must prevail.

Under our constitution, the title is regarded as an essential part of the law, having a specific object and office—to control the subject of the enactment, and to restrict its provisions and details to such matters as are pertinent and germane to the single subject expressed in the title. The constitutional provision, that "each law shall contain but one subject, which shall be clearly expressed in the title," is mandatory, with the qualification, that it should not be so exactingly enforced as to embarrass or obstruct legislation.—*Ballentyne v. Wickersham*, 75 Ala. 533. One of the main purposes of the clause is to prevent entrapping or deceiving the legislature by alluring or

[Stein v. Leeper.]

misleading titles. The same necessity does not exist, and the reasons do not apply with the same urgency, in respect to approval by the Governor ; the presumption being, that he discharges his duty, and reads both the title and the enactment, before affixing his approval. The question is, What, under the constitutional requirements, and in view of their purpose, is the consequence of an omission from the title of a bill, as enrolled and approved, of a part of the title as it was passed by both houses ? Whether the effect, in all cases, is to render the entire act unconstitutional, irrespective of the character of the omitted part, and its relations to the other provisions of the act ?

Every bill, which shall have passed both houses of the General Assembly, must be presented to the Governor for his approval or disapproval ; though his approval is not indispensable. If he disapproves, the requisite majority of both houses may pass the bill, notwithstanding ; and if he fails to return the bill within five days, Sundays excepted, after it shall have been presented to him, it shall be a law, if the General Assembly has not prevented its return by adjournment.—Con., Art. v, § 13. It is conceded, that, under our constitution, a bill becomes a law only after it has passed through all the forms prescribed, and made necessary to give validity to legislative enactments; that for the purpose of ascertaining these facts, the journals of the General Assembly may be searched ; and that the courts will pronounce it invalid, if the records disclose a failure to comply with the constitutional requirements. From an application of these principles, it has further been held, that where the Governor approves a bill, and the bill as approved materially varies in substance and legal effect from the bill as passed by the General Assembly, "then there exists such a want of legal and actual identity between the bill passed and the one approved, that neither of them acquires the force of a valid and constitutional enactment." *Jones v. Hutchinson*, 43 Ala. 721; *Moog v. Randolph*, 77 Ala. 597. And since the title is now not only important, but absolutely controls, it may be regarded as a sound rule, that any change in the title, as enrolled for the approval of the Governor, which affects the entire bill, will produce the same consequence.

An unimportant and immaterial variance will not defeat the validity of the act as a law. In *Jones v. Hutchinson, supra,* it is said: "If, in such case, the matter erroneously inserted did not affect the original bill, as it had been enrolled and passed, or did not change the substance or vary the legal effect thereof, we would not be understood as deciding that the error would vitiate the whole act." In this case, a proviso, which

[Stein v. Leeper.]

had been rejected by both houses, and which qualified and re-
stricted the general provisions of the bill, had been copied into
the enrolled bill. In *Moog v. Randolph, supra*, the revenue
bill was under consideration; and an important amendment
was omitted from the enrolled bill. The court, conceding that,
if the *amendment* was unconstitutional, the bill as approved
would be identical in legal effect with that passed by the Gen-
eral Assembly, held the amendment constitutional, and that
therefore the omission vitiated the entire act. A revenue bill,
ordinarily, is one and an entire system, all the provisions of which
sustain a mutual dependence and mutual relation. The omis-
sion of a material part disturbs the equalization of the system,
and varies, more or less, the substance and legal effect of the
entire bill.

On what principles shall it be determined, whether the
change in the bill, as approved, materially varies in substance
and legal effect of the bill as passed by the General Assembly?
A safe and practical rule is the one on which the courts ad-
judge a statute unconstitutional *in toto* or in part. Speaking
of statutes containing some unconstitutional provisions, Judge
COOLEY says: "A statute may contain some such provisions,
and yet the same act, having received the sanction of all
branches of the legislature, and being in the form of a law,
may contain other and salutary provisions, not obnoxious to
any just constitutional exception. It would be inconsistent
with all just principles of constitutional law to adjudge these
enactments void, because they are associated in the same act,
but not connected with, or dependent on, others which are un-
constitutional." The learned author thus states the test: "If,
when the unconstitutional portion is stricken out, that which
remains is complete in itself, and capable of being executed
with the apparent legislative intent, wholly independent of
that which was rejected, it must be sustained." And the same
rule is applied to a statute, some parts of which may not have
been passed in accordance with the constitutional forms, where
he says: "So, the forms observed in passing it may be suffi-
cient for some of the purposes sought to be accomplished by
it, but insufficient for others. In any such case, the portion
which conflicts with the constitution, or in regard to which the
necessary conditions have not been observed, must be treated
as a nullity."—Cooley Con. Lim. (5th Ed.), 211, 212.

We have said that the title of the act in question expressed
but one subject, and that it was not converted into two or
more subjects, because of the addition of other and different
localities; and that the original purpose of the bill was not
thereby changed. If there had been in the enrolled bill, as
approved, an important and material change in the *subject* of

[Stein v. Leeper.]

the title, materially varying in substance and legal effect the title of the bill as passed by the General Assembly, we would have been compelled, on the principles settled in the cases above cited, to hold the entire act a nullity. But there was no change in the subject of the title; only one of the localities, included in the body of the enactment, was omitted. Had the bill been passed by the General Assembly, with the title as enrolled and approved by the Governor, it will not be questioned, that the statute would have been sustained as constitutional, except as to the omitted locality. The provisions relating to the separate and different localities are not connected with, or dependent on each other, as conditions each for the other. After expunging the unconstitutional portions, the remaining parts are complete in themselves, and capable of being executed in accordance with the legislative intent. As to the remaining parts of the statute, there was a concurrence of both houses of the General Assembly and of the Executive. So far as the statute prohibits the sale, giving away, or otherwise disposing of intoxicating liquors in the localities described in the title, which are also embraced in the body of the enactment, the constitutional requirements are answered, whether they are or are not as to the locality omitted from the title as enrolled, which we do not decide. In *Binz v. Weber*, 81 Ill. 288, the title of the bill, which was to authorize the issue of bonds, when it passed the Senate, included the city of Belleville, and the towns of Mascoutah and Nashville; but in the House the name of the town of Nashville was dropped from the title. It was held, that " the mere fact that the title of the act is more restrictive than the title of the bill when it passed one of the houses, will not necessarily defeat the entire act, if there be portions of it which are still embraced in the more restrictive title, and which may be executed independently of other portions which have to be rejected;" and the act was declared valid as to Belleville and Mascoutah, and authorized them to issue bonds, whether or not Nashville could.

The enacting part of the act in question was approved by the Governor literally as passed by the General Assembly. The omission of one of the localities occurred in the title as enrolled. There was, then, a concurrence as to the body of the enactment, and also as to the localities remaining in the enrolled title. Such omission does not vary the substance and legal effect in respect to the remaining localities, and the legal identity of the bill is maintained, though with a restricted title. Our conclusion is, that the statute, so far as it relates to the locality in controversy, is valid and operative. To hold otherwise, would be to enforce the mandatory requirements of

the constitution so exactingly as to operate disastrously to legislation in many instances, and cloud with uncertainty the validity of legislative enactments.

Rehearing denied, and judgment affirmed.