# Barnhill *v.* Teague.

*Detinue for Hogs Impounded.*

1. *Act of December 9, 1890, to prevent stock from running at large in Pike county; construction of.*—The first section of the act approved December 9, 1890, (Sess. Acts 1890-91, p. 59,) entitled "An act to prevent stock from running at large in Pike county," which makes it unlawful for the owner of any horse, mule, ass, cow, *etc.*, to voluntarily or knowingly permit such animal to go at large off his premises, and subjects him to liability for all damages to fruit or shade trees, *etc.*, of any person or persons, in consequence of such animal being suffered to go at large, *etc.*, is, as confined in its operation by section 6 of the act, in and of itself, a complete enactment, entirely capable of enforcement without reference to the other provisions of the act in regard to the taking up and impounding of such animals found at large.

2. *Same; constitutionality of first section of.*—The first section of the act approved December 9, 1890, (Sess. Acts 1890-91, p 59,) entitled "An act to prevent stock from running at large in Pike county," in providing that the judgment against the owner for damages to the property of another in consequence of stock being suffered to go at large shall be a lien on the stock so found at large, is not violative of the constitutional requirement (Const. of Ala. Art. 4, § 2,) that "each law shall contain but one subject, which shall be clearly expressed in the title"; that provision not being foreign to the purpose expressed in the title of the act.

3. *Same; constitutionality of provisions of, for impounding stock.* The provision of section 3 of the act approved December 9, 1890, (Sess. Acts 1890-91, p. 59,) entitled "An act to prevent stock from running at large in Pike county," that if the owner of an animal found at large on the premises of another is unknown, the person taking it up shall proceed "as though such animal was estray, and in accordance with the laws provided in the case of estrays," is violative of the constitutional provision (Const. of Ala. Art. 4, § 2,) that "no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length";—

[Barnhill v. Teague.]

the estray law referred to not being re-enacted and published at length. And the effect of the elimination from the statute, upon this ground, of the provisions upon the subject of taking up cattle belonging to unknown owners, being that the other provisions of the act on the subject of the seizure of stock found at large can not be executed according to the intent of the legislature, the result is that the act is inoperative and void, so far as it attempts to authorize the taking up of stock found at large in Pike county, whether the owner be known or unknown.

APPEAL from the Circuit Court of Pike. Tried before the Hon. JOHN P. HUBBARD.

D. A. BAKER, and P. O. HARPER, for appellant, cited Const. of Ala. Art. 4, § 2; *Dane v. McArthur*, 57 Ala. 448; *Walker v. State*, 49 Ala. 329; *Bay Shell Road v. O'Donnell*, 87 Ala. 376; *Stewart v. Commissioners of Hale Co.*, 82 Ala. 209; *Sandy v. State*, 60 Ala. 18; *Dillard v. Webb*, 55 Ala. 468; Cooley's Const. Lim. 364.

McCLELLAN, J.—Certain hogs of the value of ten dollars were seized while running at large by James R. Teague, under the supposed authority of an act "to prevent stock from running at large in Pike County," approved December 9, 1890, (Acts 1890-91, p. 59). A. M. Barnhill, claiming to be the owner of the stock so seized and held, brought an action of detinue therefor before a justice, and being cast in that court, appealed to the Circuit Court of Pike county, where the cause was tried without a jury, on the following agreement of the parties : "We agree . . . . that the hogs sued for were seized and taken in custody by defendant, under the act to prevent stock from running at large in Pike county, passed at the session of the General Assembly of 1890 and 1891, approved December 9th, 1890, and were valued at ten dollars, and that said hogs were the property of the plaintiff; that said hogs were in the possession of the defendant, and held by authority of said act, when this suit was brought in the justice's court. We further agree that, if the said act be declared unconstitutional by the court, then the plaintiff shall have judgment for said hogs, or their alternate value, but, if it be declared constitutional by the court, then the defendant shall have judgment for said hogs, or their alternate value. Each party reserving the right of appeal to the Supreme Court of Alabama." Judgment was rendered for the defendent, and its correctness is now presented for our consideration.

The first section of the act under consideration, in most comprehensive terms, and without condition or qualification

[Barnhill v. Teague.]

whatever, makes it unlawful for the owner of any horse, mule, ass, cow, hog, sheep or goat in Pike county, to voluntarily or knowingly "permit any such animal to go at large off the premises of such owner," and subjects him to liability for all damages which may result "to the fruit or shade trees, ornamental shrubbery or crops of any person or persons in consequence of any such animal being suffered to go at large, such damages to be recovered before any court of competent jurisdiction, and the judgment therefor to be a lien on the stock inflicting the injury." The second section provides for the taking up and impounding of any such animal found at large on the premises of another, for notice to the owner when known, and to a justice of the peace of the beat when the owner is unknown, of the fact of impounding. Section three provides for the reclamation of any animal so taken up by the owner on payment of damages, fees and costs; for a trial of the rightfulness of the seizure, when that is not conceded, and when the parties are not agreed as to amount of damages, &c., for a proceeding before a justice of the peace to determine the matter; judgment therein, when the seizure is found to have been rightful, for the damages not in excess of one hundred dollars; and that if the owner be unknown, the person taking up the animal shall proceed "as though such animal was estray, and in accordance with the law provided in the case of estrays." Section four provides for the sale of any animal so taken up, when the owner is known and has failed for twenty-four hours after notice to claim the same, &c. Section five provides a schedule of fees for taking up the animals specified, and for each day of their custody by the taker up. The sixth section provides that the act shall be inoperative from the first of December to the fifteenth of the following February, with a *proviso*, "that stock running at large during such time, upon any growing or outstanding crop, shall be subject to all the penalties and damages arising under this act;" and with the further *proviso*, that the act shall not apply "to stock crossing over from counties where no stock law exists." The seventh and last section repeals all laws and parts of laws contravening the provisions of the act.

This synopsis of the act will suffice, we think, to demonstrate, or to furnish *data*, so to speak, from which it is apparent that the law-makers undertook to accomplish their purpose to prevent stock from running at large in Pike county, by two entirely different classes of provisions, or by the imposition of two separable and distinct penalties. In

14-96.

the first section, as we have seen, the end is sought to be accomplished by a declaration of the unlawfulness of allowing certain live-stock to go at large off the premises of the owner, and by subjecting any owner to a suit and judgment for all damages resulting from his unlawful act, and fastening a lien on the depredating stock for the satisfaction of such judgment. This section is not dependent for force or completeness upon any other section or clause of this act. It is, in and of itself, a well rounded-out and complete enactment, entirely capable of enforcement, and well adapted to the consummation of the legislative purpose of prevention, without reference to any subsequent provision of the statute. But one subsequent provision, as a matter of fact, bears upon this first section, and that not by way of weakening its force in its general application, but only by confirming its general operation to that period of each year falling between the fifteenth day of February and the first day of December, and giving it between December 1st and February 15th next ensuing only a special operation as to stock running at large upon growing or outstanding crops; thus relieving the owner, so far as this statute is concerned, from the liability imposed by the first section for injuries to shade and fruit trees and ornamental shrubbery occurring during these two and a half winter months. The remaining sections of the enactment undertake to more certainly effectuate the legislative purpose of prevention by providing other and different penalties for a violation of the inhibition of the first section, other and different means of enforcing such penalties, and other and different modes of proceeding to assess and coerce the payment of damages caused by cattle unlawfully at large. But, whether the provisions of these subsequent sections can be enforced or not, whether, conceding their validity, they are sought to be enforced in a given instance or not, is wholly immaterial upon the questions of the validity of the first section, and of the efficacy of the remedy it offers. If they are invalid, the party aggrieved need not invoke them, but may elect to proceed under the first section alone, and by so doing fully satisfy his claim for damages. It is very clear to our minds, therefore, that the first section of the act, as limited in its operation by section 6, must stand, whatever be the fate of other provisions of the statute.—*McCreary v. State*, 73 Ala. 480 ; *Ballentyne v. Wickersham*, 75 Ala. 533 ; *Stein v. Leeper*, 78 Ala. 517 ; *Ramagnano v. Crook*, 85 Ala. 226.

It is argued, however, that this section of the act, taken by itself, is unconstitutional on two grounds. In the first

place, it is insisted that its provision to the effect that the judgment of the court when against the owner of stock shall be a lien on the stock so found at large is foreign to the title of the act. The settled construction of Section 2, Art. IV of the Constitution, here invoked, which prescribes that "each law shall contain but one subject, which shall be clearly expressed in its title," is of such a liberal character as to admit of the insertion in a bill of all provisions, which, though not specifically expressed in the title, are proper to the full accomplishment of the object indicated by the title, are referrable and cognate thereto, or are necessary to a complete and rounded out enactment, "or which results as a complement to the thought contained in the general expression" of the purposes of the proposed law. *Ballentyne v. Wickersham*, 75 Ala. 533; *Stein v. Leeper*, 78 Ala. 517; *Montgomery v. State*, 88 Ala. 141. An act to prevent stock from running at large would generally be most lame and impotent if it failed to provide for the seizure of stock at large in violation of its provisions, and for subjecting the same to the satisfaction of all claims for costs, fees and damages resulting from their being at large, and the consequent right to impound them. This is the almost universal, and certainly the most efficacious method, of enforcing the penalties imposed, or enforcing the claims allowed by such statutes; and the usual course to these ends involves the declaration of a lien on the property, and provisions for its enforcement. Such declaration and provisions are not only referrable and cognate to the general purpose of prevention expressed in the title, and proper for the carrying out of that purpose in such sort that they may be supposed to be in all minds actuated by that purpose in the passage of the bill, but they are, it may be said, absolutely necessary to the end in view. We entertain no doubt that the provision quoted is fully covered by, and therefore, in the constitutional sense, expressed in the title of the act under consideration.

The provisions of the act with reference to impounding cattle where the owner is known are free from constitutional objection. With respect to cattle, however, the owner of which is unknown, the act contains no provision, except those authorizing the proprietor of the premises on which they are found to take them up, and requiring him to personally notify or leave a notice at the residence of the nearest justice of the peace in his beat, of the fact of impounding, looking to the custody and disposition of the stock so taken up, unless the last clause of section 3 is to be upheld

[Barnhill v. Teague.]

as a valid exercise of legislative power. That clause is, as has been stated, in these words: "If the owner of such animal [found at large on the premises of another and taken up under this act] is unknown, the person taking up the same shall proceed as though such animal was estray, and in accordance with the laws provided in the case of estrays." We do not think this provision can be so upheld. It is violative of that clause of § 2, Art. IV, of the Constitution which ordains that "no law shall be revived or amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length." The clause of the act in question which we are considering is an attempt to have all the provisions of the statute of estrays applied to the live stock of unknown owners taken up under the Pike county stock law. This special act embraces and applies to goats in addition to the animals specified in the estray law; it also authorizes the taking up of all neat cattle, sheep and hogs, between the first days of April and November, while the estray law is inoperative between these dates, except with respect to cows with young calves; and it authorizes the owner, &c., of any land to take up cattle found at large on his premises, i. e. land, regardless, we should say, of whether he had a residence or plantation thereon, and regardless of the proximity of such land to his residence or plantation, while the estray law only authorizes the taking up of live stock about a residence or plantation; and in each of these respects, the effect of this clause, if allowed to stand, would be to extend the estray law to cattle, and, in the last stated particular, to confer its provisions upon persons, not embraced in its terms, without any pretense of re-enacting and publishing at length the statute thus extended and conferred, and with even less indication of its contents than would be imported by a reference to its title. This can not be done. The effort here made is abortive. And the provision whereby it was undertaken to make the estray law applicable to all cattle impounded under this special act is unconstitutional and void. *Stewart v. Com'rs of Hale Co.*, 82 Ala. 209; *Bay Shell Road Co. v. O'Donnell*, 87 Ala. 376.

Eliminating from the statute this clause attempting to extend and confer the provisions of the estray law, the only provision in the act as to stock of unknown owners is that which authorizes landholders to take them up and notify a justice of the peace of the fact. No disposition of such stock is provided for. No proceeding looking to its con-

demnation is contemplated. Nothing is provided looking to the ascertainment of the owner or to affording him an opportunity to appear and claim his property. Of course, the taker-up could not keep it or become the owner of it. He is simply and only empowered to take it up, and is without authority either to hold or dispose of it. The provision, in the nature of things, must be wholly futile and nugatory. To accord to it any force or effect would be to deprive the citizen of his property without that due process of law which organic limitations secure to him.

Yet the right to impound under this statute the cattle of unknown owners is necessary to give efficiency to those sections and provisions of the law, the purpose of which is to enforce the policy of prevention declared in the first section, by allowing all cattle found at large to be seized, in addition to the remedy by suit against the owner there provided. The manifest legislative intent was to prevent stock from running at large, absolutely regardless of whether the owner is known or unknown. So far as this intent is sought to be effectuated by providing for seizures, it is clear that the regard which must be had to the question of the owner being known or unknown, under the view we have stated, will emasculate the statute, since probably in most instances where stock is found at large their ownership is not known, and hence in most instances no seizure can be made; and the intention of the law in this respect can not be carried out. In other words, the elimination from the statute, upon constitutional considerations, of the provisions intended to authorize the taking up of cattle belonging to unknown owners so emasculates it in respect of the seizures intended to be provided for, as that it can not be executed at all in that respect according to the intent and purposes of the legislature; and all of these provisions must fail. And we accordingly hold that the act is inoperative and void in so far as it attempts to authorize the taking up of stock found at large in Pike county, whether the owner be known or unknown.

It was solely under these provisions for the taking up of stock that the defendant below held and claimed title to the stock involved in this suit, the plaintiff's title being admitted if the defendant had no right to seize and hold the property under this law. These provisions being avoided, and, therefore, carrying no title into the defendant nor justifying the seizure and detention complained of, it follows that the judgment for the defendant below must be reversed,

[Atkinson & Turner v. James.]

and the cause remanded to the Circuit Court, to the end that judgment may there be entered for the plaintiff.

Reversed and remanded.