ELI S. PRESCOTT *et al.*, Plaintiffs in Error, *v.* THE BOARD OF TRUSTEES OF THE ILLINOIS AND MICHIGAN CANAL, Defendants in Error.

### ERROR TO COOK.

The third section of the act entitled " An Act in relation to the Illinois and Michigan canal and canal lands, approved February 14, 1851," authorizing a re-appraisment of canal lands, is not in force, and the re-appraisement under said section is without effect.

The Supreme Court will look behind a printed statute to the journals, to ascertain whether it has a legal existence.

THIS was a case submitted to the Cook Circuit Court, on an agreed statement of facts, of which the following is a substantial statement:

Prescott and Arnold owned pre-emptions, or, in other words, were entitled to purchase, at the appraisal, lots one, two, three and four, and also parts of seven and eight, in block seven, in the original town of Chicago.

These lots had been appraised twice, and the question submitted was, *whether Prescott and Arnold should pay at the first or second appraisal.*

By the law of 21st February, 1843, and as amended March 4, 1843, the owners of improvements made upon canal lands and lots, prior to 1st December, 1842, were entitled to purchase the lands and lots on which such improvements were situated, at an appraisal.

Improvements were made on the said lots previous to 1st December, 1842, and pre-emption rights acquired, of which Prescott and Arnold were the owners at the time said lots were offered for sale.

On the 28th day of August, 1848, said lots were duly appraised by Joel A. Matteson, Francis C. Sherman, and William Reddick, in conformity with law, as follows:

Lot 1, block 7, $2,500,    Lot 4, block 7, $2,500,
" 2, " 7, 2,000,    " 7, " 7, 800,
" 3, " 7, 2,000,    " 8, " 7, 1,000.

Said lots were not offered for sale until 1855. When said lots were offered for sale, said Prescott and Arnold, having previously filed proof, in due form, of their right to purchase at the appraisal, were the owners of the improvements, and entitled to purchase the same at the appraisal.

When said lots were offered, said Prescott and Arnold tendered the amount of such appraisal, in conformity to the rules of the canal trustees, and insisted upon their right to purchase the same at such appraisal.

The canal trustees insisted upon the payment of the amount of a second and *higher* appraisal, which had been made under the following circumstances:

The board of canal trustees, under a law, supposed to have been passed in 1851, had caused said lots to be *re-appraised* by said Joel A. Matteson and Francis C. Sherman, as follows:

Lot 1, in block 7, $3,200,    Lot 4, in block 7, $4,000,
" 2, in " 7, 2,800,    " 7, in " 7, 1,600,
" 3, in " 7, 2,800,    " 8, in " 7, 2,000.

Prescott and Arnold insist that their right to purchase at the appraisal, was a vested right, and that after such appraisal was once made, said lots were not subject to a *re-appraisal*, and that such *re-appraisal* was void and illegal, and could not affect their rights, even if it had been made under authority of law; but the same was made without authority of law, as will appear by the following statement:

Said appraisal was made under a law supposed to have been passed 14th February, 1851, the third section of which authorized the canal trustees to cause the re-appraisal of block seven and other lots remaining unsold.

The following is a correct statement of the action of the Senate and the House of Representatives of this State in relation to said law:

A bill for an act entitled " An Act in relation to the Illinois and Michigan canal and canal lands," having passed the Senate, was reported to the House on the 11th of February, 1851, (which was the bill in question). On the same day, February 11th, 1851, it was taken up, read a first and second time, and referred to the committee on canal and canal lands.

On the 13th of February, 1851, it was reported back from said committee, and ordered to a third reading. " Mr. Emerson moved to amend by striking out the third section; Mr. Briggs moved to lay the amendment on the table, which was not agreed to. *The third section was then stricken out*, and the bill, as

amended, was passed, yeas fifty-three, nays nine, as by reference to said journal will more fully appear."

No action was had upon the bill, in the Senate, after the third section was stricken out. The bill never passed either branch of the General Assembly. Said Prescott and Arnold, therefore, insisted upon their right to purchase said lots at the *first* and indeed *only* legal appraisal, on two grounds:

*First.* Inasmuch, as their pre-emption right was undisputed, when the lots were appraised in 1848, their right to purchase became absolute, and could not be affected by any subsequent action of canal trustees.

*Secondly.* The second appraisal was made without any authority of law, the statute under which it was supposed to have been authorized never having passed in point of fact.

The canal trustees, insisting on the payment of the second appraisal, it was paid *under protest;* and all but the last payment has been made; Prescott & Arnold always insisting on their right to purchase at the amount of the first appraisal, and making each payment under protest; they have nearly paid for the lots according to the first valuation or appraisal: and both parties desiring the opinion of the court, as to the legality of the second appraisal, the foregoing facts, being agreed upon, were submitted to the Circuit Court of Cook county, and that court, MANNIERE, Judge, presiding, directed that the lots should be sold under the first appraisal.

E. PECK, for Plaintiffs in Error.

I. N. ARNOLD, for Defendants in Error.

BREESE, J. From the agreed case, it will be perceived the lots, about which this controversy has arisen, were appraised under the act of the General Assembly, entitled " An Act to provide for the completion of the Illinois and Michigan canal, and payment of the canal debt," approved February 21st, 1843, and as amended by the act of March 4th, 1843. Subsequently, on the 5th of March, 1851, the board of trustees, defendants in error, proceeded to have these lots re-appraised, claiming the right so to do, in virtue of the third section of the act entitled " An Act in relation to the Illinois and Michigan canal and canal lands," approved February 14, 1851.

Such an act is to be found in the statute book; (Laws 1851, page 90) but in reality, there is no such law in existence, and never has been. Its history is correctly stated in the agreed case, as we have ascertained by a careful examination, not only of the printed journal, but of the original manuscript journal of the session of 1851.

A bill with this title passed the Senate, and was reported to the House on the 11th February, 1851, where, on the same day, it had two readings, and was referred to the standing committee on canal and canal lands.

On the 13th February it was reported back, and ordered to a third reading, at which stage of the bill a member moved to strike out the third section, which was agreed to, and the bill thus amended passed the House by yeas 53, nays 9. (House Journal, pp. 332, 346).

On the same day, the amendment was reported to the Senate, by message from the House, that " the House had concurred with the Senate in the passage of the following bills, to wit: ' An Act in relation to the Illinois and Michigan canal and canal lands.' Amend by striking out third section." (Senate Journal, 338). No further action of the Senate on the bill is shown by the journal, but on the same day, " Mr. Kuykendall, from the committee on enrolled bills, reported as correctly enrolled, and this day laid before the Governor, the following bills, to wit: ' An Act in relation to the Illinois and Michigan canal and canal lands.' " Ib. 354.

On the 15th February the Governor, by his private secretary, informed the Senate, by message, that he had approved and signed certain bills, among them " An Act in relation to the Illinois and Michigan canal and canal lands." Ib. pp. 416, 417.

From this department it passed, like all other bills approved, to the proper depository, the office of the Secretary of State, and duly copied for the printer, with the third section remaining in it, as we find it in the statute book.

This section, thus stricken out by the House, forms no part of the bill, nor has the remainder of the bill any vitality, as it did not, when amended, receive the constitutional action of the Senate. The whole thing is a nullity.

As that section conferred the power of re-appraisal, and it having no legal existence, the action of the board of trustees under it is also a nullity, and the claimants, Arnold and Prescott, having succeeded to the rights of the pre-emptors, under the act of 1843, were entitled to purchase at the appraisal under that law.

That the court can and will look behind a printed statute to the journals, is fully established by the case of *Spangler* v. *Jacoby*, 14 Ill. R. 297.

As this is the only point made for our consideration, we affirm the judgment of the Circuit Court.

*Judgment affirmed.*