## JONES *vs.* HUTCHINSON.

[MOTION BY SHERIFF FOR INSTRUCTIONS AS TO APPLICATION OF MONEY MADE UNDER EXECUTIONS.]

1. *Statute; to what courts will look, to ascertain legal existence of.*—It is well settled that the courts will, if necessary, look behind a statute, to the legislative records, to ascertain whether it has a legal existence.

2. *Bill; when becomes a law.*—A bill only becomes a law, when it has gone through all the forms made necessary by the constitution to give it force and validity.

3. *Act entitled "An act to declare judgments liens upon the property of defendants," approved February 19, 1867; has no force as a legislative enactment.*—The act entitled "An act to declare judgments liens upon the property of defendants," approved February 19th, 1867, has no force as a constitutional enactment. The bill which passed the two houses of the general assembly, was not signed by the respective officers thereof, nor presented to, or approved by, the governor. The bill which was signed by the respective officers of the two houses, and approved by the governor, never passed through both houses of the general assembly. The bill, as passed by the two houses, and the bill approved by the governor, are widely variant in substance and in legal effect.

4. *Quere.*—If, in making a copy of an engrossed bill for enrollment, a separate and distinct matter from the propositions of the original bill were inadvertently inserted, but which did not affect the original bill as it passed, and did not change the substance and vary the legal effect thereof, would it vitiate the whole act?

5. *Section 2877 of Revised Code; not affected by failure of the act of 19th of February, 1867, to become a law.*—Section 2877 of the Revised Code, which took effect on the day on which the Code went into operation, and which re-enacted what the two houses of the general assembly had previously declared should be the law in regard to liens of judgments, is not affected by the failure of the act of the 19th of February, 1869, to become a law.

2. *Proceeds of sales under executions; how divided, when liens are equal.*— When the money made under executions, the liens of which are equal, is insufficient to satisfy them, it must be applied equally to the several

executions, without regard to their amount; and in case of a surplus, after the payment of one or more, the balance must be equally applied to the unsatisfied executions.

APPEAL from the Circuit Court of Wilcox.
Tried before the Hon. JOHN K. HENRY.

THIS was a motion by the sheriff of Wilcox county, for instructions as to the application of money made under executions, and, as appear from the bill of exceptions, was based on the following state of facts : " On the 18th day of April, 1867, Gertrude Jones recovered a judgment in the circuit court of Wilcox county, against M. W. Creagh, for the sum of $13,955 60, and costs of suit, on which judgment execution was issued, and received by the sheriff of Wilcox county on the 17th day of May, 1867. On the 18th day of April, 1867, M. Block recovered a judgment against said Creagh, in the circuit court of Wilcox county, for $100 damages and costs, on which judgment execution issued on the 22d of July, 1867, and was received by the sheriff of Wilcox county on the 1st day of August, 1867. On the 20th day of March, 1867, George L. Hutchinson recovered a judgment against said Creagh, in the circuit court of Marengo county, for $536 44 and costs, on which judgment execution issued on the 22d day of July, 1867, and was received by the sheriff of Wilcox county on the 1st day of August, 1867. On the 24th day of August, 1867, the sheriff of Wilcox county levied all of said executions on lands of the defendant in Wilcox county, and after due notice, &c., sold said lands under said executions for $1,682 20. The judgment in the case of George L. Hutchinson against M. W. Creagh was not recorded in the office of the probate court of Wilcox county prior to said sale of said lands. This was all the evidence."

The court instructed the sheriff, " after paying the costs of the cases, to satisfy in full the execution in favor of Hutchinson, and then pay the balance *pro rata* upon the executions in favor of Gertrude Jones and M. Block; to which order and ruling of the court, said Gertrude Jones excepted," &c., and appeals to this court, assigning as error, the judgment of the court below.

PETTUS & DAWSON, for appellant.
W. H. CRENSHAW, *contra.*

JUDGE, J.—It is contended by appellee, that the judgment rendered in his favor in the circuit court of Marengo county in March, 1867, against M. W. Creagh, was a lien upon the lands of the latter situated in the county of Wilcox, under and by virtue of what purports to be an act of the legislature, approved February 17, 1867, to be found in the printed Session Acts of 1866–7, p. 609, and which is as follows :

" That all existing judgments of courts of record in this State, and all which may hereafter be rendered in said courts of record, be, and the same are, liens upon all the property of the defendants therein, which is subject to levy and sale ; *Provided,* that the lien shall extend only to property in the county where the judgment was rendered, and in the county where it is recorded in the office of the probate court."

The appellee further contends, that the proviso to this act was never passed by the legislature, while the other portion of the act is of force ; and that the proviso should not be regarded as a part of the law. It is insisted by the appellant, that no portion of the act in question was constitutionally enacted, and that, therefore, the judgment constituted no lien upon the lands.

We regard it as being now well settled, that courts can, and, if necessary, will look behind a printed statute, to the legislative records, to ascertain whether it has a legal existence.—*Spangler v. Jacoby,* 14 Ill. 297 ; *Prescott v. Illinois & Michigan Canal Co.,* 19 Ill. 324 ; *People v. Purdy,* 2 Hill, (N. Y.) 31 ; *Fowler v. Pierce,* 2 Cal. 165.

Thus, looking behind the printed statute in question, we find the following facts :

1st. The bill originated in, and was passed by, the senate, without the proviso.

2d. In the house, the bill was amended, by the adoption of the proviso, and was passed as amended.

3d. The senate refusing to concur in the house amendment, a committee of conference of the two houses was

appointed, which reported against the proviso, and recommended that the house should recede from its amendment.

4th. The report of the committee was concurred in by the house, and the senate was notified by the latter that it had receded from its amendment.

5th. The original *engrossed bill* was never *enrolled* as it passed; but, in making what was intended to be an *enrolled copy*, to be signed by the presiding officers of the two houses respectively, and to be presented to the governor, the proviso which had been rejected by the two houses, as before stated, was copied into the bill as a part of it, and this erroneously *enrolled bill* was signed by the speaker of the house and president of the senate, and was presented to and approved by the governor, as a bill which had been passed by the two houses respectively.

The foregoing facts being established by the legislative records, did the bill, or any part of it, become a law?

A glance at some of the constitutional requisites necessary to give force and validity to an act of the legislature, will show, as we think, that no part of the bill in question ever acquired the force of law, as a constitutional enactment of the legislature.

The following are some of these constitutional requisites: First. The bill must be read in each house, respectively, three several days before it is passed, unless four-fifths of the house in which the bill may be depending, dispense with this rule. Second. The bill having passed both houses, shall be signed by the speaker and president of the respective houses. Third. After having been thus passed and signed, it shall be presented to the governor; if he approve, he shall sign it, but if not, he shall return it to the house in which it originated, with his objections; and if each house, on a reconsideration of the bill, shall pass it by a majority of the whole number elected to each house, it shall become a law, notwithstanding the veto. If the bill shall not be returned to the governor within five days after it shall have been presented to him, it shall be a law in like manner as if he had signed it.—Revised Constitution, Art. IV, § 18; Art. V, § 16.

It is undeniably true, that a bill becomes a law only

Jones v. Hutchinson.

when it has gone through all the forms made necessary by the constitution, to give it force and validity. Now, the bill in the present case, which was signed by the speaker of the house and president of the senate, and which, after being thus signed, was presented to and approved by the governor, was not the bill which had been passed by the two houses; and the bill which was passed by the two houses was never signed by the speaker and president of the respective houses, and was never presented to the governor for his constitutional action thereon, the governor being, as to such constitutional action, a component part of the law-making power. The bill, which was signed and approved, made, as we have seen, all existing judgments of courts of record, and all which might thereafter be rendered in such courts, liens only in the county where rendered, and in the county where recorded in the office of the probate courts; while the bill which was passed by the two houses made such judgment liens throughout the State and in every county alike, whether recorded or not.

The wise rules adopted as safeguards against error in the business of legislation, are ordinarily sufficient to secure the object; but, notwithstanding the utmost vigilance, error will sometimes intervene. In making the copy of an engrossed bill for enrollment, a separate and distinct matter from the propositions of the original bill might be inserted, and escape detection, before the adjournment of the legislature. If, in such case, the matter erroneously inserted did not affect the original bill, as it had been engrossed and passed, or did not change the substance and vary the legal effect thereof, we would not be understood as deciding that the error would vitiate the whole act. But such is not this case; and we feel constrained to declare that not only that portion of the act relied upon by appellee, but the whole of said act has not, and never had, the the force and validity of law.

To prevent misapprehension, we deem it proper to state that our conclusion, as to the validity of the act in question, does not affect the validity of section 2877 of the Revised Code, which took effect on the day the Code went into operation, and which re-enacted, as of the date last men-

tioned, what the two houses of the general assembly had previously declared should be the law in regard to the liens of judgments. It is needless, perhaps, to remark that this section of the Code can have no application to the present case. For the guidance of the court below, on another trial, we state that the rule of the common law is (and it has never been changed in this State by statute), that when the money arising from the proceeds of the sale of property under two or more attachments, or executions, *the liens of which are equal,* is not sufficient in amount to pay all the debts that have been levied, it must be applied equally to the several debts, irrespective of their several amounts, unless a surplus remains after a full payment of one or more of the claims. In case there be such surplus, that must be applied equally to the balance of the unpaid debts.—*Rutledge, Adm'r, v. Townsend, Crane & Co.,* 38 Ala. 706; *Bizzell v. Hardaway,* decided at the January term, 1868.

The court below, having erred in giving the force of law to a portion of what we have declared to be null and void, in its entirety, as an act of the legislature, the judgment must be reversed, and the cause remanded.