Speak, J.
The burden is on the relators to show that the bill became a law. It is not claimed that the bill was signed by the presiding officer of either house, or was filed among the valid acts in the office of the secretary of state in the regular *256 course of proceeding. It is not to be found among the printed laws in the current volume of Ohio laws. Following the laws and resolutions, and immediately after the certificate of the secretary of state, an “ addendum” is found printed (by what authority does not appear), on pages 454 and 455, containing what is claimed to be a copy of the bill as passed, and with it a certificate of the clerk of each house, of date some twenty days subsequent to the adjournment of the general assembly, giving a recital of the action taken In each house in regard to the bill, that of the clerk of the senate, in addition, to the effect that the foregoing is a true copy of the bill as it passed. This cannot aid the relators. The proceedings, as shown by the journals, the court may take judicial notice of, and the certificate of the identity of the printed bill, by the clerk of the senate, is not of consequence because not authorized by statute. Not so, however, with the certificate of the secretary of state, on page 453. That is required by section 129 of the Revised Statutes, and effect is given to it by virtue of that section. The certificate shows that the foregoing acts and joint resolutions are true copies, copied from the original rolls on file in his office, and negatives the idea that that which follows is copied from such rolls. Hence, the contents of pages 454 and 455, of the volume referred to, have no legal significance, and the volume (84 Ohio Laws), in legal effect, indicates that this bill was not one of the laws enacted by the 67th general assembly. No copy or record of the bill appears on the journal of either house. The bill presented does not, therefore, in the light of what the court may take judicial notice of, purport to be a law, and, in order to declare it such, the court must ascertain its contents by resort to sources of information other than those referred to.
The questions then, are, whether for this purpose resort may be had to evidence dehors the journals and the roll of duly certified laws in the office of the secretary of state, and whether, notwithstanding the bill was not signed by the presiding officer of either house, and was not enrolled in the office of the secretary of state as a law, it nevertheless has the force of law? Unquestionably, the legislature intended that this bill should become a law, and unless *257 this court can answer the questions proposed in the affirmative, this purpose will be, at least for the present, defeated. The publication provided for by the bill would tend to the advancement of science, and to the enlightenment of the people upon a subject of general interest, and one which is constantly growing in importance. So that, there is strong inclination on the part of the court to determine the question involved in such way as will give expression to the will of the law-making power. Nevertheless, if, upon due consideration, it is manifest that the bill cannot be maintained as' a law of the land, it is the imperative duty of the-court to so declare, however much we may regret the result. Impressed with the importance of the question, we have given to the case careful consideration.
Section 17 of article 2 of the constitution, is as follows: “ The presiding officer of each house shall sign, publicly in the presence of the house over which he presides, while the same is in session and capable of transacting business, all bills and joint resolutions passed by the general assembly.”
No judicial interpretation has been given to this section so far as we are informed. The preceding section, which provides that every bill shall be fully and distinctly read on three different days, and that no bill shall contain more than one subject, which shall be clearly expressed in its title, etc., has been considered by this court, and the views of the court Upon it are well stated by Swan, J., in Pim v. Nicholson, 6 Ohio St. 177, as follows: “ This court held, in the case of Miller and Gibson v. The State, 3 Ohio St. 475 that the provisions of the above section, relating to the distinctness required in reading a bill, and the number of times a bill shall- be read, were, as they in fact import, intended as permanent rules for the proceedings of the houses. They are directory only, and are to be enforced by the houses, and not by judicial interposition. The further provision, in the same section, that no bill shall contain more than one subject, which shall be clearly expressed in its title, is also made a permanent rule in the introduction and passage of bills through the houses. The subject of the bill is required to be clearly expressed in the title, for the *258 purpose of advising members of its subject, when voting, in cases in which the reading has been dispensed with by a two-thirds vote. The provision that a bill shall contain but one subject, was to prevent combinations, by which various and distinct matters of legislation should gain a support which they could not if presented separately. As a rule of proceeding in the general assembly it was manifestly an important one. But if it was intended to effect any practical object for the benefit of the people in the examination, construction, or operation of acts passed and published, we are unable to perceive it. The title of an act may indicate to the reader its subject, and under the rule each act would contain one subject. To suppose that for such a purpose the constitutional convention adopted the rule under consideration, would impute to them a most minute provision for a very imperfect heading of the chapters of laws and their sub-division. This provision being intended to operate upon bills in their progress through the general assembly, it must be held to be directory only.”
It is entirely clear that section 17 cannot be treated as a mere guide to the action of the general assembly in order to the more full enlightenment of the members in the performance of their duties, or as a check upon them, as the signing of a bill by the presiding officer in no substantial way affects the action of the members, or relates to the passage of the bill through either body. The members, as such, have performed every duty regarding a bill prior to the time when the duty of signing by the presiding officers may be performed. This signing in'open session may, incidentally, serve to fix the attention of members "to the bill being signed, but it has a much more important purpose. It authenticates a bill, and affords a sure means of identification. No official copy is required of a bill introduced, nor is it required to be copied on the journal, and a legal standard of comparison is wanting. The signatures of the presiding officers, therefore, furnish the evidence that that which the journals show, by title and number, passed the general assembly, is this identical measure. The act thus authenticated is to be given the force of law, is to be treated as such, and to prove itself upon inspection; and this verification *259 by the officers designated by the constitution is the conclusive evidence to the secretary of state that the act so signed is a law, and entitled to be filed as such in the office of that officer, and, under his direction to be published, duly certified by him, for the information and guidance of all the people of the state. The signing is, therefore, for the benefit of the people in their examination to ascertain what is, and what is not law. It is apparent that the reasoning which led this court to declare section 16 to be directory, does not apply to section 17, and that the cases referred to are not authority in the case at bar.
Were there a provision requiring that all bills introduced should be spread at length upon the journal, and were this bill to be found copied on the journal of either house, it is probable, that, following former holdings of this court, resort might be had to that mode of identification. But no such record exists, and reliance upon title, number, and designation, for identification of contents, would, we think be inadmissible.
At the trial, the state librarian was offered by the relator as a witness, and it was proposed by the testimony of this witness to identify a copy which it was claimed had been deposited in' the state library, in compliance with section 59 of the Revised Statutes, and thus supply proof of the contents of the bill. That is to say, the court was asked to take the copy thus proffered from the state library, and, by making in it the changes which the journals of the two houses show were made while the bill was pending, make up a completed bill, and declare it law. The testimony is believed not to be competent. It was an effort to introduce parol proof, and, in effect, to try the validity of a law upon the testimony of witnesses. The section referred to requires that the clerk of each house shn.U deliver to the printer, for his use in printing, all of the papers and documents laid before the branch of which he is clerk, which are ordered by such branch to be printed; and the printer shall immediately print two hundred and forty copies thereof, of which number each of the executive officers shall receive one, and the state librarian five, which he shall preserve. Upon whom devolves the duty of delivering these copies, is left to inference. No provision is made for their certification *260 as true copies, nor for special care in their safe-keeping, nor for perpetuation of evidence of contents by a record of them. The librarian is required to simply preserve the copies which he receives, a duty which attaches to all books and pamphlets of which he has the care. He is not required to make copies for use elswhere, nor is provision made for a certificate of any kind, or for any mode of authenticating them. Yet, if this be competent testimony, the occasion for its introduction may arise as well in any court in the remotest county in the state as in this court. Copies deposited in the library furnish a convenient source of information to any person interested in pending legislation, but it cannot be that the legisture intended that a copy of a bill found in the state library should be treated as a record of a law, or as taking the place of signatures of the presiding officers, and it is apparent that the admission in evidence of the testimony proposed would establish a precedent of a loose and most dangerous character. The effect of a resort to parol proof to establish the validity of a law was fully considered in The State ex rel. Herron v. Smith, 44 Ohio St. 348, and it is not necessary to do more here than refer to that case.
Whether, a provision imperative in its terms should be treated as directory or as mandatory, has been held to be a matter of éxpedieney, though Judge Cooley, in his work on constitutional limitations, observes that “ courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provision of a constitution. ” Another author says that “ the question is in the main governed by considerations of convenience and justice. ” Giving effect to the more liberal view, it may be said that if no advantage would be lost, or right destroyed, or benefit sacrificed either to the public, or to an individual by such a holding, the provision might be regarded as directory. Or, if less injury would result by disregarding than by enforcing the provision according to its letter, then it could with propriety be treated as directory merely. But if the lax rule would tend to the injury of the public, or if, applied to the facts of a given case (though possibly conducive to good results *261 in that special instance), would introduce a dangerous precedent, then, especially as to constitutional provisions, should a court be reluctant to depart from the letter of the constitution. Cooley on Constitutional Limitations, 93; Maxwell on the Interpretation of Statutes, 452; The State v. Covington, 29 Ohio St. 117. In the light of these considerations, we inquire whether section 17, before quoted, should be regarded, in this case, as merely directory, or as embodying a positive requirement ? ' And this is a practical question: "Where a bill has received the sanction of a majority of each house of the general assembly, but has not been signed by the presiding officer of either house, or filed in the office of the secretary of state in the regular course of procedure, or enrolled there, or published among the authorized laws, can it be treated as law by the courts ?
We are reluctantly led to the conclusion that it cannot. The advantages to be derived by a recognition of this bill as a law would, we think, be far outweighed by the perils which might follow the establishment of so dangerous a precedent. As applied to this case, the result of this holding but postpones, in all probability, to the meeting of another assembly, the accomplishment of the object sought. Nor will this view necessarily work irreparable inconvenience as applied to any class of legislation. In a case where the subject-matter of a bill thus defeated is vital to the public business of the state, the authority of the governor to call together the general assembly, and give opportunity for all needed requirements to be observed, is ample. On the other hand, the importance of furnishing to the people, sources of information, certain in their character and convenient of access, as to what is, and what is not law, is obvious. All are presumed to know the law, and it is of great interest to each citizen, as well as to the public officer, that there be some authentic record to w.hich he may resort to ascertain certainly and definitely what laws are enacted by the legislature; what control him in the daily transaction of business, and of what, at his peril, he is bound to take notice. Whatever conduces to certainty in this regard, therefore, is of great moment to every person in the state, and no rule of construe *262 tion would be wise which leaves so important a matter in doubt or confusion.
It is urged that to give controlling'effect to section 17 would be to clothe the presiding officers of the general assembly with a veto power, and such a result cannot have been intended by the convention which framed the constitution. Certainly that body did not so intend; but we think the result feared is not likely to follow. Our attention is called to the case of Leavenworth v. Higginbotham, 17 Kansas, 62. In that case the bill in question was passed, signed by the governor, and published more than eleven years prior to the decision, and all departments of the state government hacl held it valid, though it lacked the signature of the presiding officer of the senate. The court decided that “ the bill should be held to be valid, although it may not have the signature of the presiding officer of the senate affixed to it.” In the opinion, prominence is given to a consideration of the suggested dangers which would follow if the signatures of the presiding officers were deemed essential. "Whatever significance should be attached to this consideration in the newer states, we are impressed that, as applied to this state, the danger is more fancied than real. Section 17 has been in force, as a constitutional requirement, since the formation of the state,' and this is the first instance, so far as we are advised, in which there has been a failure to observe it. . If any has occurred, the learned counsel has omitted to call our attention to it. Howevei’, the obvious answer to this objection is, that confidence must be reposed somewhere; it is not to be presumed that men selected to fill places of such high trust will intentionally violate the constitution, and prove false to their oaths.
Cottrell v. The State, 9 Nebraska, 125, is cited. In that case a like provision was held to be directory. Maxwell, C. J., in the opinion says: “ The signature of a presiding officer to a bill is a mere certificate to the governor that it has passed the requisite number of readings, and been adopted by the constitutional majority of the house over which he presides. The vote upon the passage of the bill must be determined from the journals of the respective houses. And where it appears from *263 the journals that a bill has passed by the requisite majority, and has been approved by the governor, the failure of the presiding officer to affix his signature thereto, will not invalidate the act, as it will be presumed that the governor had sufficient evidence before him of the passage of the bill at the time he approved the same.”
It appears that all due formalities had been observed as regards the act, save only the signature of the presiding officer of the senate. It had the governor’s signature, was duly enrolled in the office of the secretary of state, and it had been in force for years. The' governor’s signature apparently served, not only as showing his official assent to the measure, but as authenticating the bill itself. In this state the governor takes no part in the approval or authentication of laws. There are other notable differences between these cases and the case at bar. If a case were presented where a bill, lacking only the signature of the presiding officer of one house, had been filed by the secretary of state, published under his authority as a law and recognized as such by all other branches of the state government, and acquiesced in for years, a different question would be before us.
The two cases just referred to are the only authorities we have noticed which appear to sustain the relator’s claim, and, we think, when duly considered, they fail to do so. On the other hand, the positions heretofore assumed are believed to be in consonance with the views of text-writers and with many adjudicated cases. See Burroughs on Public Securities, 425; State v. Swift, 10 Nev. 176; State v. Rogers, 10 Nev. 250; State v. Glenn, 18 Nev. 34; The State v. Mead, 71 Mo. 266; Pangborn v. Young, 32 N. J. L. 29; Sherman v. Story, 30 Cal. 253; Mayor v. Harwood 32 Md. 471; Jones v. Hutchinson, 43 Ala. 725.

Writ refused.