THE PEOPLE *ex rel.* Lockwood Honore

*v.*

PETER B. OLSEN, County Clerk, *et al.*

and

THE PEOPLE *ex rel.* Theodore Brentano *v.* SAME.

*Opinion filed June 14, 1906.*

1. STATUTES—*effect where one section of an act is not regularly enacted.* The fact that one section of a statute is not enacted by the legislature in the mode prescribed by the constitution does not render void other sections of the statute to which the constitutional objection does not exist, and which are a complete act in themselves and are not dependent upon the void section. (Contrary expressions in *Prescott* v. *Trustees,* 19 Ill. 324, overruled.)

2. SAME—*an unconstitutional section of a statute is a nullity.* A section of a statute which is void because in conflict with some limitation of the constitution is a nullity, and must be treated, in the construction of the statute, as though it had never been passed by the legislature nor approved by the Governor.

3. FEES AND SALARIES—*legislature may change salaries of judges and State's attorneys independently of each other.* The circuit and superior judges and the State's attorney of Cook county bear no such legal relation to each other as precludes the legislature from enacting a law changing the salary of the judges without changing the salary of the State's attorney, notwithstanding they are mentioned together in section 25 of article 6 of the constitution.

4. CONSTITUTIONAL LAW—*sections 1 and 3 of act of 1901, fixing salary of Cook county judges, are valid.* Sections 1 and 3 of the act of 1901, (Laws of 1901, p. 207,) fixing the salary to be paid by the county of Cook to the circuit and superior judges of such county are valid, even though section 2, which fixes the salary of the State's attorney of such county, is void because not regularly enacted by the legislature.

ORIGINAL petition for *mandamus.*

The relator filed his petition in this court at the last term for a writ of *mandamus* against Peter B. Olsen, county clerk of Cook county, to which the board of county commissioners

was made a party defendant on the motion of said Olsen, commanding said Olsen, as county clerk, to draw an order on the county treasury of Cook county in favor of relator for the sum of $541.66, alleged to be a balance due him for salary as one of the judges of the circuit court of said county for the quarter ending March 31, 1906. The petition alleged that on the first day of June, 1903, the relator was duly elected a judge of the circuit court of Cook county, took the oath of office as required by law, was duly commissioned on June 18, 1903, and entered upon the duties of his office, which he has continued to perform from that time to the present; that the respondent Peter B. Olsen for two years last past has been, and is now, the duly elected, qualified and acting county clerk of said county; that on March 31, 1906, it was, and now is, the law of the State of Illinois that the judges of the circuit and superior courts of Cook county elected after the first day of July, 1901, should be paid by the county of Cook, in addition to the salary paid them from the State treasury, such further compensation as will make their respective salaries amount to the sum of $10,000 per year, to be paid in equal quarterly installments; that since the first day of July, 1901, it has been, and now is, the duty of the county clerk of said county, at the end of each quarter, to draw an order or warrant upon the county treasury of said county in favor of said judges so elected, for the compensation to be paid by the county to them; that since the date above specified each of the judges of the circuit and superior courts elected after said date have been paid from the State treasury a salary of $3500 per year, and no more, and therefore, in pursuance to the law of the State of Illinois, each of said judges is entitled to receive from the county of Cook the sum of $6500 per year, payable at the end of each quarter; that said judges have received such further compensation at said rate up to the first day of January, 1906, and on March 1 of that year there was due and unpaid to the relator for the balance of said compensation the sum of $541.66, but

the respondent Olsen, in violation of the law and the relator's rights, refused to issue such order or warrant for said sum; that on April 2, 1906, relator made a demand on him for said order, which he refused to execute and deliver, wherefore relator prays for a writ of *mandamus,* etc.

The respondent Olsen answered the petition, alleging that the only law in force fixing the salary of the judges of the circuit court of Cook county is an act of the General Assembly in force July 1, 1871, fixing the limit of compensation at $7000 per year, and that for the quarter ending March 31, 1906, the relator was paid by the county of Cook, on warrants drawn on its county treasury, the sum of $1083.32 for salary as judge of the circuit court, which was paid on separate warrants of $541.66 at the close of January and February, respectively. It is then alleged that the act in force July 1, 1901, upon which relator relies, was never passed by the legislature in conformity with the requirements of the constitution, and is therefore null and void. It sets up that the bill was first introduced in the Senate and there passed under the title of "An act providing for the payment by the county of Cook of further compensation to the judges of the circuit and superior courts and State's attorney of said county, respectively," etc. Section 1 provided for the payment by the county to the judges of the circuit and superior courts of a sum, in addition to the salaries which may be paid them from the State treasury, sufficient to make their respective salaries amount to the sum of $12,000 per year. The second section provided for the payment of the same sum, $12,000 per year, to the State's attorney of Cook county. The third section provided that the salaries so provided for should be paid in quarterly installments, and that it should be the duty of the county clerk of said county, at the end of each quarter, to draw an order or warrant therefor in favor of each of said judges and the State's attorney, on the county treasurer of said county, whose duty it should be to pay the same on presentation and proper endorsement. The bill so passed by

the Senate went to the House for its concurrence, and there the title of the bill was first stricken out, but later that action was rescinded and several amendments were made to the bill as it came from the Senate. Of these, amendment No. 2 amended section 1, line 9, after the word "of," by adding the words "twelve thousand dollars ($12,000)." Amendment No. 4 amended section 2, line 3, after the word "of," by adding the words "twelve thousand dollars ($12,000)." Amendment No. 5, after the word "year," in line 4 of section 2, inserted the words, "and shall be in full for all services of the State's attorney of Cook county, and all fees as provided by statute and earned by the State's attorney of Cook county shall be paid into the county treasury of Cook county." Afterwards, in the House, the question being on the adoption of the amendments, on motion the following amendment to No. 2 was adopted: "Amend committee amendment No. 2 by striking out the words and figures 'twelve thousand dollars ($12,000),' and insert in lieu thereof the words and figures 'ten thousand dollars ($10,000).'" The other amendments were adopted, including No. 5, and the bill as thus amended went to a third reading and was passed. The answer further alleges that by some means the figures $12,000 in the second section of the act were changed to $10,000 before it was signed by the speaker of the House and president of the Senate and before it was acted upon and approved by the Governor. While there are no available means of ascertaining just when or by whom the change was made, attributing to all parties having to do with the bill honesty of purpose, it probably resulted from the amendment, in the House, of section 1, changing the figures $12,000 to $10,000, the person making the change carelessly assuming that the amendment applied to both sections. However that may be, it does appear from the answer that the bill, as it was signed by the presiding officers of the respective houses and approved by the Governor, never, in fact, passed either branch of the legislature. The answer is demurred to, and

taking it as true it necessarily results that section 2 must be held illegal and void.

A similar petition was filed on behalf·of Theodore Brentano, of the superior court, against the respondents, which involves the same questions presented by this case. That petition has been consolidated with this, and will be considered on the same brief and argument.

WATERMAN, THURMAN & ROSS, (A. N. WATERMAN, of counsel,) for petitioners:

The rule which prevails as to statutes containing constitutional and unconstitutional provisions is, that if, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed with the apparent legislative intent, wholly independent of that which is rejected, the remaining constitutional portions are valid and will be sustained. *Binz* v. *Weber,* 81 Ill. 288; *Railroad Co.* v. *Jones,* 149 id. 361; *Dupee* v. *Swigert,* 127 id. 494; *Myers* v. *People,* 67 id. 503; *Knox County* v. *Davis,* 63 id. 405; *Nelson* v. *People,* 33 id. 390; *Cornell* v. *People,* 107 id. 372; *People* v. *Knopf,* 183 id. 410, and 198 id. 340; *People* v. *Simon,* 176 id. 165; *Lasher* v. *People,* 183 id. 226; *People* v. *Kipley,* 174 id. 44; *People* v. *State Reformatory,* 148 id. 413; *Williams* v. *People,* 121 id. 84; *Donnersberger* v. *Prendergast,* 128 id. 229; Cooley's Const. Lim. (7th ed.) 247; *Field* v. *Clark,* 143 U. S. 649; *Hinze* v. *People,* 92 Ill. 406; *Noel* v. *People,* 187 id. 587.

From the foregoing rule it follows logically and inevitably that it is immaterial whether the invalidity of a portion of a statute is due to its repugnance to the constitution, or its not having been enacted in accordance with certain forms prescribed by the constitution. In either case, if, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must be sustained. Cooley's

Const. Lim. (7th ed.) 247; *Stein* v. *Leeper,* 78 Ala. 517; *Binz* v. *Weber,* 81 Ill. 288; *Abernathy* v. *State,* 78 Ala. 411; *Stowe* v. *Grand Rapids,* 79 Mich. 595; *State* v. *Singleton,* 24 Neb. 586; *In re Groff,* 21 id. 647; *Watertown* v. *Cady,* 20 Wis. 528; *Berry* v. *Railroad Co.* 41 Md. 446.

The statute under consideration has been so long acted upon and approved by this court, the respondents and the public, that it will not be now set aside because of an alleged informality in its enactment. *Nye* v. *Foreman,* 215 Ill. 285; *Foreman* v. *People,* 209 id. 567; *Mitchell* v. *Campbell,* 19 Ore. 198.

C. H. POPPENHUSEN, J. L. MCNAB, and MICHAEL GE-SAS, (S. S. GREGORY, of counsel,) also for petitioners:

The effect of a change in an act after its passage by the legislature and before it comes to the hands of the Governor, in a single section or particular not necessarily interwoven with or connected with other matters in the act, is simply to avoid that section of the act in that particular, and not avoid the entire act. *Berry* v. *Railroad Co.* 41 Md. 446; *Stowe* v. *Grand Rapids,* 79 Mich. 595; *State* v. *Platt,* 2 S. C. 150; *In re Groff,* 21 Neb. 647; *Binz* v. *Weber,* 81 Ill. 288.

The constitutionality of the act in question has been assumed though never passed on by this court. *Foreman* v. *People,* 209 Ill. 567; *Nye* v. *Foreman,* 215 id. 285.

HARRY A. LEWIS, WILLIAM F. STRUCKMANN, and FRANK L. SHEPARD, for respondents:

The constitution of the State of Illinois prescribes the form and method by which a bill may be enacted into a law. A bill failing to meet the constitutional requirements in its enactment is a nullity. The bill in question failing in material respects to meet the constitutional requirements in its enactment never became a law but is a nullity, and the act never having become a law, no part of it became a law. *Burritt* v. *Comrs. of State Contracts,* 120 Ill. 322; *Prescott* v.

*Trustees,* 19 id. 324; Const. art. 4, secs. 11, 12, 13, and art. 5, sec. 16; *State* v. *Wendler,* 94 Wis. 369; *People* v. *Knopf,* 198 Ill. 340; Cooley's Const. Lim. 130.

The act in question provides for an increase in the salaries of the judges, for an increase in the salary of the State's attorney, and for the payment into the county treasury of the fees earned by the office of the State's attorney. These provisions are so mutually connected with and dependent upon each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature and the Governor intended them as a whole, and it cannot be presumed that the legislature would have enacted or the Governor approved the provision designed to increase the judges' salaries without the provision increasing the State's attorney's salary and the provision turning into the county treasury additional revenues. If the court should hold that the fees earned by the office of State's attorney of Cook county were, under the old law, the personal perquisites of the State's attorney and that the provision in the new law requiring their payment into the county treasury falls, then the apparent consideration for the provision increasing the salaries of the judges, payable out of the county treasury, fails, and with it must fall the increased salaries. Cooley's Const. Lim. 178, 179; *People* v. *Cooper,* 83 Ill. 585; *Mathews* v. *People,* 202 id. 389; *People* v. *Olsen,* 204 id. 494; *People* v. *Martin,* 178 id. 611; *People* v. *DeWolf,* 62 id. 253; *State* v. *Perry County,* 5 Ohio St. 497; *Slausson* v. *Racine,* 13 Wis. 398; *State* v. *Deal,* 24 Fla. 293; *Jones* v. *Hutchinson,* 43 Ala. 721.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The second section of the act in question not having been passed by either branch of the legislature or signed by the speaker of the House and president of the Senate and approved by the Governor, is consequently null and void. But it is insisted on behalf of the relator, that, notwithstanding

the invalidity of that section, the act is valid and complete as to the salaries of the judges of the superior and circuit courts, under the well recognized rule of construction that where the several provisions of an act are separate and distinct from each other, one may be declared unconstitutional and void and the others sustained, whereas it is earnestly contended by counsel for respondent that section 2 being void the whole act must fall.

Judge Cooley, in his work on Constitutional Limitations, (7th ed. p. 246,) treating of this subject, says: "It will sometimes be found that an act of the legislature is opposed in some of its provisions to the constitution, while others, standing by themselves, would be unobjectionable. So the forms observed in passing it may be sufficient for some of the purposes sought to be accomplished by it but insufficient for others. In any such case the portion which conflicts with the constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law, and what manner and to what extent the unconstitutional portion affects the remainder. A statute, it has been said, is judicially held to be unconstitutional because it is not within the scope of the legislative authority. It may either propose to accomplish something prohibited by the constitution, or to accomplish some lawful, and even laudable, object, by means repugnant to the constitution of the United States or of the State. A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the legislature and being in the form of law, may contain other useful and salutary provisions not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act but not connected with or dependent upon others which are unconstitutional.

Where, therefore, a part of a statute is unconstitutional that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section, for the distribution into sections is purely artificial, but whether they are essentially and separably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them."

The rule of construction here announced, as far as we have been able to ascertain, has been universally adopted by the courts both of this country and Great Britain. In

fact, we do not understand counsel for the respondents to question it, but their contention is that the statute in question does not fall within the rule for two reasons: First, failing to meet the constitutional requirements in its enactment it never became a law, but is an absolute nullity, and therefore no part of it can be held valid; second, the provisions of the statute, taken together, are so mutually connected and dependent on each other as to warrant the belief that the legislature and the Governor intended them as a whole, and it can not be presumed that the legislature would have enacted, or the Governor approved, the provision designed to increase the judges' salaries without increasing the State's attorney's salary, and providing for turning into the county treasury additional revenues. In the consideration of these propositions it will be necessary to first determine whether, on the face of the statute, the several sections are so dependent upon each other and intended to operate together for the same object, or are otherwise so connected in meaning, that they must stand or fall together, or whether they are so blended with each other that it cannot be presumed the legislature would have passed the first and third sections, and the Governor approved them, without the second. If it shall be found that they are so dependent upon each other or commingled together, then the unconstitutional section falling will carry with it all other provisions of the act, and this without reference to the question as to the irregularity of the passage of the law.

Both the title and body of the act expressed the legislative intent to increase the compensation of two classes of officers: the circuit and superior judges and the State's attorney of Cook county. These officers bear no such legal relation to each other as to justify the inference that the salary of one would not have been increased without the other. The legislature might with perfect consistency have increased one and left the other unchanged, or increased one and decreased the other. It is wholly immaterial that they are men-

tioned together in section 25 of article 6 of the constitution of 1870. That section does not in any way affect the power of the county commissioners to fix the compensation to be paid out of the county treasury at different sums for the judges and the State's attorney. Nor is it at all important in the determination of this question that the act of 1871 fixes the salaries of both at the same amount in the same section. If the present act had simply increased the compensation of both by a single section, as did the former one, there would be no ground for controversy here. But the statute of 1901 attempted to provide for the salaries of the judges by one section and of the State's attorney by another and distinct section, which fact, if it indicates anything, shows that the legislature, in passing the last act, regarded the salaries of the two classes of officers as distinct subjects of legislation. But however that may be, certainly no argument is needed to show that the compensation to be paid a judge furnishes no criterion whatever for fixing that of a prosecuting or State's attorney. The duties of the two officers are entirely distinct and separate,—as much so as those of a judge and clerk, sheriff, or other ministerial officer of the court.

But it is earnestly insisted by counsel on behalf of the respondents, that, the requirements of the constitution as to the passage of statutes not having been followed, and that fact appearing from the answer, the entire law is unconstitutional and void, and they insist that the foregoing rule, under which one provision of a statute may be held contrary to the constitutional limitation and other parts sustained, has no application to such a law, and cite several decisions of this court which they understand to sustain their position. It is undoubtedly true that the language used in *Prescott* v. *Trustees of Illinois and Michigan Canal,* 19 Ill. 324, sustains the contention, as do, perhaps, expressions used in other cases; but when the questions which were before the court for decision in those cases are carefully considered it will be found that they are not at all in point. In the *Prescott case* the

question was as to the validity of a section of the statute, the facts being that that section never passed the Senate, and it was, of course, held that it was invalid. The question here raised,—that is, whether one section being void the whole statute must fall,—was not in the case, and therefore the statement in the opinion that the whole act must fall was strictly *obiter dictum,* and cannot be said to be an authority on the question now before us. *People* v. *Starne,* 35 Ill. 121, simply holds that the irregularity,—that is, that the act then before the court had never been put upon its passage in the House of Representatives, either as a whole or in part,—rendered the act void *in toto.* And the same is true of the act under consideration in *Ryan* v. *Lynch,* 68 Ill. 160. This act was shown not to have been read in the Senate on three different days nor passed by a vote of the yeas and nays, and the irregularity of course affected the whole statute, and not a particular part of it. In *Burritt* v. *Commissioners of State Contracts,* 120 Ill. 322, the question was whether a joint resolution of the House and Senate authorizing the purchase of books, having no title or enacting clause and not being signed by the speaker of the House, was a valid enactment, and it was held that it was not. Nor does *People* v. *Knopf,* 198 Ill. 340, sustain the contention of counsel. There it was simply held that certain portions of the act were unconstitutional and void, and that they were so connected with and related to the other portions that none could stand. It is true, we there cited the *Prescott case* and other cases referred to by counsel, but only as authority that the court would look behind a printed statute to the journals of the legislature in passing upon the constitutionality of a law, and the language quoted from the *Prescott case,* as to the effect of a void section on the whole law, was not for the purpose of indicating our approval of the *obiter dictum* in that opinion.

The question in this form has never been presented for our decision, but the principle was involved and passed upon in *Binz* v. *Weber,* 81 Ill. 288. There the title of an act au-

thorizing the issue of town bonds, when it passed the Senate, included the names of the city of Belleville and the towns of Mascoutah and Nashville, but in the House the town of Nashville was dropped out of the title. The validity of a tax levied to pay interest on bonds issued by the town of Mascoutah under the provisions of that law was involved, and it was urged against the tax that because the law has a title more restrictive than had the bill when it passed the Senate, and because this more restrictive title does not appear to have been adopted by the ayes and noes and by a majority of the members of each house, the law was not constitutionally adopted. Referring to the constitutional provision as to the title of acts and the manner in which they shall be voted upon, it was said (p. 290) : "Under this constitutional requirement, then, we must look to the title of this bill as it passed each house, and not to the title of the act after its adoption, to learn what portion of its provisions are constitutional. By thus applying these provisions to the passage of laws we have no doubt we shall effectuate the intention of the framers of that instrument. * * * Tested, then, by these requirements, was this a constitutional law? This law undoubtedly does authorize the city of Belleville and town of Mascoutah to issue bonds, and that purpose was clearly expressed in the title as it passed both houses. It is true, the journals may show,—and it is stipulated they do,—that the title, when the bill passed the Senate, was more comprehensive, and embraced the town of Nashville, in Washington county; but in the House the name of the latter town was omitted. But we fail to see how that could affect the law so far as it related to the city of Belleville and town of Mascoutah. They were both embraced in the body of the bill and in the title as it passed both houses, and that answers the constitutional requirements, and we must hold that both of these places may legally act under the law, whether or not Nashville can. * * * The doctrine is well established that although some provisions of an act are repugnant to the con-

222—9

stitution, the others are valid if they are capable of being carried into operation; and there can be no doubt that all relating to Nashville may be stricken out and still enough remain to permit Belleville and Mascoutah to issue and deliver valid and binding bonds."

The case of *Stein* v. *Leeper*, 78 Ala. 517, involved questions similar to those decided in *Binz* v. *Weber, supra,* and in the opinion of the Supreme Court of Alabama the latter case is cited with approval, and the court concludes its opinion as follows: "The enacting part of the act in question was approved by the Governor literally as passed by the General Assembly. The omission of the localities occurred in the title as enrolled. There was then a concurrence as to the body of the enactment and also as to the localities remaining in the enrolled title. Such omission does not vary the substance and legal effect in respect to the remaining localities, and the legal identity of the bill is maintained though within a restricted title. Our conclusion is, that the statute, so far as it relates to the locality in controversy, is valid and operative. To hold otherwise would be to enforce the mandatory requirements of the constitution so exactingly as to operate disastrously to legislation in many instances and cloud with uncertainty the validity of legislative enactments." Very many forcible illustrations of the truth of this last sentence are shown in the brief and argument of counsel for petitioner, in which the strict enforcement of the constitutional requirements as to the passage of statutes would result most disastrously to the public.

The position of counsel is, that the rule permitting a portion of a statute to be upheld although other portions are condemned as unconstitutional and void, applies only to acts of the legislature which have been passed as a whole in strict conformity with the methods prescribed by the constitution. While the distinction can be readily seen, it is not easy to find a satisfactory reason upon which to base it. A section of a statute which is void because of its being in conflict with

some limitation of the constitution is an absolute nullity and must be treated in the construction of the statute as though it had never been passed or approved by the Governor. If the question were wholly one of first impression we should feel compelled to hold that the distinction insisted upon should not be maintained. Turning to the decisions of other courts we find that the question has been fully considered and passed upon to that effect. In the case of *Berry* v. *B. & D. P. Ry. Co.* 41 Md. 446, the Court of Appeals of Maryland, after holding that the court may go behind the printed statutes to the journals of the respective houses of the General Assembly to ascertain whether the law has been constitutionally passed or not, and after holding that the third section of the act as it was sealed and approved by the Governor was materially different from the same section as it passed the House, and therefore null and void, entered upon the further question as to how the invalidity of that section operated upon the remainder of the act, and said: "Upon examination it is found that the third section is entirely separate and disconnected from the other sections of the act, and that the operation and effect of those sections in no manner depend upon the co-existence of the third section. As applicable to such case, Judge Cooley, in his work on Constitutional Limitations, (p. 177,) says: 'So the forms observed in passing it may be sufficient for some of the purposes sought to be accomplished but insufficient for others. In any such case the portion which conflicts with the constitution or in regard to which the necessary conditions have not been observed must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law and in what manner and to what extent the unconstitutional portion affects the remainder.'" And the court proceeded to hold the remainder of the statute valid.

In *State ex rel.* v. *Platt,* 2 S. C. 150, the case is sufficiently stated in the syllabus, as follows: "On March 1, 1870, the

General Assembly of the State passed 'An act to revise, simplify and abridge the rules of practice, pleadings and forms of courts in this State.' The 19th section of the enrolled act, to which the great seal of the State was affixed and which was signed in the Senate chamber by the president of the Senate and speaker of the House of Representatives and received the approval of the Governor, provided that the courts for the county of Barnwell should be held at Barnwell; but it appeared by the journals of the two houses of the General Assembly that the same section of the bill as it finally passed both houses provided that the courts for that county should be held at Blackville. By the law as it stood at the passage of the act the place last named was the county seat of Barnwell county: Held, that the 19th section of the act was void, and consequently that Blackville remained the county seat of Barnwell county." The Supreme Court of South Carolina, in its opinion, dealing with the question here involved, says: "In a technical sense the term 'bill' is applicable properly to the enactment as a whole. Although the technical sense of words should prevail where not inconsistent with the clear intent of the instrument, yet when such intent requires that words should be used in a larger sense it is competent so to regard them. If we should hold that the constitution regards the enactment as wholly in an exclusive sense we would be led to the inevitable conclusion that to become a law all the substantial parts of the measure must have together passed through all the requisite stages. The consequence of this would be, that alteration in a substantial part during such progress would be fatal to the whole. By a substantial part is meant any section, clause or word that conveys distinct expression of the legislative will which cannot be supplied by construction from the other parts of the act, leaving out of view that part in which the defect lies. Whether it is to be regarded as substantial does not depend upon its importance or unimportance to the rest of the act, but upon its being, in itself, an expression of the legislative will, capable

of being the subject of the separate act. It would lead us to the conclusion, in the present case, that if the law in question, although, in substance, a code of legal procedure, differed, as it passed the House, from the enrolled act in respect of any matter, though a mere word, that covered a distinct expression of the legislative will not capable of being made out by construction applied to the rest of the act, the whole must be regarded as unconstitutional. That the constitution intended no such absurdity is manifest. When a deed or contract cannot be carried into full execution by reason of error, the law invariably eliminates the error either by construction or reformation, when that can be done without the substantial destruction of that in which it inheres. This principle is constantly applied to statutes where some independent matter, capable of severance from the body of the statute, is inoperative under the constitution. The rules of construction are based, in part, upon this principle so vital to them, that they would not only lose their scientific character, but fail to express that common sense fundamental to all legal system if deprived of it," and the part of the statute under consideration which had not been passed in conformity with the constitution was held illegal and void but the remainder valid. To the same effect will be found *Abernathy* v. *State,* 78 Ala. 411; *Stowe* v. *Common Council,* 79 Mich. 595; *State of Nebraska* v. *Singleton,* 24 Neb. 586; *In re Groff,* 21 id. 647.

Our conclusion is, that the mere fact that section 2 of the act in question was not passed by the legislature in the constitutional mode cannot have the effect of destroying the validity of the remaining sections.

The second point urged on behalf of respondents has in part been already disposed of,—that is, that the sections as they appear in the statute are so interwoven with or related to each other that one cannot be held invalid and the others sustained. But counsel insist that the proceedings in the House of Representatives, as shown by the answer, clearly

indicate that it would not have passed sections 1 and 3 without section 2, their contention being, that the amendment of that section by adding the words, "and shall be in full for all services of the State's attorney of Cook county, and all fees as provided by statute and earned by the State's attorney of Cook county shall be paid into the county treasury of Cook county," indicated the purpose that the increased compensation should be paid out of the funds arising from that source. However plausible the argument may appear on first impression, we do not think it can be maintained. The object in passing section 1 was manifestly to provide what the legislature considered a fair and reasonable salary for the services of the judges of the circuit and superior courts and for the State's attorney, and there is nothing whatever in the language of the statute to indicate an intention to limit the payment of such salaries to any particular fund belonging to the county. If the intention had been to limit the payment of the same to the fees turned in by the State's attorney it would have been easy to have so provided. We may speculate as to the motive of the General Assembly in that regard, but in the absence of anything appearing in the act itself to justify the conclusion we are not at liberty to say the first section would not have been passed without the second, including the provision for turning over the fees of a State's attorney's office. In the language of the rule laid down by Judge Cooley, *supra,* the fact that one part of a statute is unconstitutional "does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning that it cannot be presumed the legislature would have passed the one without the other." In other words, under such circumstances the presumption is that the legal parts would have been enacted. It seems clear to us that the fact that the increased compensation of the judges was placed in a separate and distinct section from that which purported

to increase the compensation of the State's attorney sufficiently indicates that the legislature would have passed the one without the other. Certainly we are not justifiable, upon the facts appearing in this record, in presuming it would not.

Our conclusion is, that sections 1 and 3 of the act of May 10, 1901, in force July 1, 1901, are valid enactments, and the respondent Peter B. Olsen, as county clerk of Cook county, should have drawn his warrant on the treasurer of Cook county according to the demand of the relator, as stated in his petition. A peremptory writ of *mandamus* will accordingly be awarded against him, as prayed.

*Writ awarded.*